OPINION
{¶ 1} Juvenile-appellant, P.G., appeals from the judgment of the Brown County Court of Common Pleas, Juvenile Division, adjudicating him delinquent on the basis of arson and possession of a deadly weapon or dangerous ordnance in a school safety zone. For the reasons outlined below, we affirm the decision of the juvenile court.
 {¶ 2} On October 4, 2005, appellant, a 15-year-old tenth grade student at Eastern High School in Sardinia, Ohio, brought a plastic bottle, a household cleaning product, and *Page 2 
aluminum foil to school.[1] During the lunch period, appellant went into the restroom and poured the cleaning agent into the plastic bottle. He returned to the cafeteria and ate his lunch. Before taking his lunch tray up to the front of the cafeteria, appellant pulled out the plastic bottle, put aluminum foil in it, and set it on his tray. When appellant took his lunch tray up, he tossed the plastic bottle into the trash can. Moments later, a "pop" noise was heard and a cloud of smoke or gas billowed from the trash can.
 {¶ 3} The school principal, Mr. Ted Downing, was summoned to the cafeteria and removed the trash can from the room. Downing was informed by other students appellant had placed a "bottle bomb" in the trash can. Downing took appellant to his office where appellant gave Downing the gloves he had used and told him that he had combined Red Devil drain cleaner and aluminum foil in a plastic bottle to see what would happen. Appellant told Downing he had practiced the combination a few times the night before. Deputy Rob Highfield of the Brown County Sheriff's Office arrived and appellant admitted the same to him. Appellant later voluntarily wrote out a statement in which he described that he "brought a bottle and toilet cleaner plus aluminum foil. Mixed it together, tossed it into a garbage can. The materials expanded and created gas and the bottle started leaking gas in the cafeteria." Appellant continued, stating, "I really have no idea why I did it. It just seemed interesting to me. It was a stupid thing and I didn't really think about it till (sic) after I had already done it."
 {¶ 4} Principal Downing and Deputy Highfield both inspected the trash can, which had been splattered with the contents of the bottle. Both the bottle and the trash can liner were distorted and melted. Downing and Highfield then disposed of the damaged liner and the melted bottle, placing the contents in another trash container and throwing them away.
 {¶ 5} Appellant was subsequently charged with arson in violation of R.C. *Page 3 2909.03(A)(3), a fourth-degree felony, and conveyance or possession of a deadly weapon or dangerous ordnance in a school safety zone, in violation of R.C. 2923.122(B), a fifth-degree felony. Appellant denied both charges and a contested adjudication hearing was held on February 28, 2006.
 {¶ 6} The state presented the testimony of Principal Downing and Deputy Highfield, as well as that of two students from Eastern High School who were in the cafeteria with appellant when the incident occurred. Appellant presented the testimony of four other students from the cafeteria as well as that of Dr. James Myers, a clinical psychologist who performed a psychological evaluation on appellant. At the close of all of the evidence, the court adjudicated appellant delinquent on both charges. A disposition hearing was held on May 3, 2006, at which time the court ordered a 180-day suspended commitment to the Juvenile Detention Center; 6 months to age 21 suspended commitment to the Ohio Department of Youth Services; 70 hours of community service, payment of costs, and intensive reporting probation. Appellant filed this timely appeal and now raises five assignments of error for our review.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE JUVENILE COURT ERRED TO THE PREJUDICE OF THE JUVENILE-APPELLANT IN MAKING AN ADJUDICATION OF DELINQUENCY ON THE BASIS OF ARSON WHERE THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN THE ADJUDICATION."
 {¶ 9} Assignment of Error No. 2:
 {¶ 10} "THE JUVENILE COURT'S DECISION TO ADJUDICATE THE JUVENILE-APPELLANT A DELINQUENT CHILD ON THE BASIS OF ARSON WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} In his first and second assignments of error, appellant challenges the sufficiency *Page 4 
and weight of the evidence underlying the juvenile court's verdict adjudicating him delinquent for arson. Because these two assignments of error may be resolved together, we will address these issues jointly.
 {¶ 12} Appellant argues that the state failed to provide sufficient evidence to support the court's delinquency finding by failing to establish, beyond a reasonable doubt, that appellant created a fire or explosion or knowingly caused a substantial risk of harm by tossing the "bottle bomb" into the cafeteria trash can. Appellant further argues that the weight of the evidence underlying these elements overwhelmingly supports a verdict finding him not delinquent on the charge of arson.
 {¶ 13} The standards of review employed in determining whether the evidence is legally sufficient to sustain a trial court's finding of delinquency is the same standard applied in adult criminal convictions.In re A.L, Butler App. No. CA2005-12-520, 2006-Ohio-4329, ¶ 11, citingIn re Washington, 81 Ohio St.3d 337, 1998-Ohio-627. In reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court examines the evidence in order to "determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus; State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. In such a review, "a reviewing court must not substitute its evaluation of the witnesses' credibility for that of the trier of facts." In re A.L. at ¶ 12.
 {¶ 14} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue *Page 5 
rather than the other. Thompkins at 387. Again, the same standard applied in adult criminal convictions, is applied in the review of a juvenile adjudication. In re D.B., Butler App. No. CA2005-12-524,2006-Ohio-3240, ¶ 5. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins at 387.
 {¶ 15} Although a reviewing court considers the weight of the evidence and the credibility of the witnesses, "that review must nevertheless be tempered by the principle that weight and credibility are primarily for the trier of fact, as they are in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." State v. Kash, Butler App. No. CA2002-10-247, 2002-Ohio-415, ¶ 25; citing State v. DeHass (1967), 10 Ohio St.2d 230. The discretionary power to overturn a conviction based on the manifest weight of the evidence is to be invoked only in those extraordinary circumstances to correct a manifest miscarriage of justice where the evidence presented weighs heavily in favor of acquittal.Thompkins at 387.
 {¶ 16} Because a finding that a conviction is supported by the manifest weight of the evidence also necessarily includes a finding that it is supported by sufficient evidence, our determination that the juvenile court's verdict in this case is supported by the manifest weight of the evidence is also dispositive of appellant's sufficiency claim. See State v. Lombardi, Summit App. No. 22435, 2005-Ohio-4942, ¶ 9, citing State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462.
 {¶ 17} R.C. 2909.03 defines the offense of arson and provides, in relevant part, that: *Page 6 
 {¶ 18} "No person, by means of fire or explosion, shall knowingly do any of the following: * * * (3) cause, or create a substantial risk of, physical harm to the statehouse or a courthouse, school building, * * *."
 {¶ 19} Appellant first challenges the weight and sufficiency of the evidence presented to support the element which requires that the defendant employed "fire or explosion," arguing that no evidence supported the state's argument that the "bottle bomb" thrown into the cafeteria trash can exploded or caught on fire.
 {¶ 20} Initially, we note that the term "explosion," as used in the arson statute, is not defined. In looking to other areas of the law, we find that the term "explosion" has no strict definition in ordinary speech or in law, and is instead described by its general characteristics. See Falkner v. Para-Chem, Summit App. No. 21288, 2003-Ohio-3155, ¶ 16; United Life, Fire Marine Ins. Co. v. Foote
(1872), 22 Ohio St. 340, 347-348.
 {¶ 21} The Ohio Supreme Court and the Sixth Circuit Court of Appeals have applied the following general definitions of the term "explosion":
 {¶ 22} "It may be defined as a sudden accidental, violent bursting, breaking, or expansion caused by an internal force or pressure which may be and usually is accompanied by some noise." American Alliance Ins. Co.v. Keleket X-Ray Corp. (C.A.6, 1957), 248 F.2d 920, 925.
 {¶ 23} "An explosion may be described generally, as a sudden and rapid combustion, causing violent expansion of the air, and accompanied by a report. But the rapidity of the combustion, the violence of the expansion, and the vehemence of the report, vary in intensity as often as the occurrences multiply." United Life, Fire Marine Ins. Co. at 347-348.
 {¶ 24} The Ohio Supreme Court went on to explain that "an explosion is an idea of degrees, and the true meaning of the word, in each particular case, must be settled, not by *Page 7 
any fixed standard, or accurate measurement, but by the common experience and notions of men in matters of that sort." Id. at 348. Therefore, while its general characteristics may be described, "the exact facts which constitute what we call by that name, are not susceptible of such statement as will always distinguish the occurrences." Id. at 347.
 {¶ 25} We turn, then, to the evidence presented in this case. Principal Downing, the state's first witness at appellant's adjudication hearing, testified that he was called to the cafeteria by teachers on duty in the cafeteria who reported to him that there had been explosions in the trash can. Downing even repeated that the teachers described the events as explosions specifically, saying, "not loud noise, but exploding." A.F., the state's third witness testified that she was sitting at the same table as appellant in the cafeteria when she heard a loud "pop" noise from the trash can. On cross-examination, A.F. testified that she heard this loud "pop" over the other noise in the cafeteria and that the noise got the attention of others in the immediate area who, then "looked around to see what happened."
 {¶ 26} Appellant also produced witnesses from the cafeteria, specifically four girls who testified that they did not hear any kind of explosion or "pop" sound from the trash can. However, at least two of these witnesses also testified that the cafeteria was noisy and that the state's witness, A.F., was "significantly closer," to the trash can than they were. All of the testifying witnesses who had been present in the cafeteria to see the events in question attested to seeing a cloud of what they varyingly described as a light colored "smoke" or "gas" or "vapor" or "mist," coming from the trash can. Further, Deputy Highfield testified that the bottle appellant used was "melted" and "distorted" from the heat of the chemical reaction created by the cleaning agent and aluminum. Principal Downing testified that the bottle was empty and the liquid contents were splattered inside the lining of the trash can.
 {¶ 27} According to these facts, we find that appellant created an explosion. The degree of the explosion, while perhaps not severe, does not diminish the fact that one *Page 8 
occurred, and does not negate the potential risk of harm appellant created. See State v. Johnson, Cuyahoga App. No. 81814, 2003-Ohio-4180 (finding that merely because ineptly made firebomb did not result in fire or explosion or damage did not bar conviction for arson to property) reversed and remanded on other grounds.
 {¶ 28} Appellant also challenges the weight and sufficiency of the evidence presented to support the element which requires that appellant acted knowingly in creating a substantial risk of physical harm to the school building. R.C. 2901.22(B) provides that "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.01 (A)(8) defines "substantial risk" as a "strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."
 {¶ 29} Appellant argues that the state failed to present any evidence to support the assertion that appellant was aware that his conduct would create a "substantial risk of physical harm to the school building," as required by the arson statute. Appellant asserts that the evidence that he had previously practiced this chemical reaction at home without disastrous result kept him from realizing any potential for "substantial risk of physical harm."
 {¶ 30} However, by appellant's own admissions, he was aware that his conduct in combining the cleaning agent and aluminum in the bottle would cause the gases to expand, create heat, and cause an explosion. Dr. James Myers, a clinical psychologist who evaluated appellant, described appellant as "smart", "aware", and "able to anticipate consequences." Further, Dr. Myers testified that appellant described the school incident to him and explained that he had mixed the cleaning agent and aluminum to create a chemical reaction resulting in the release of hydrogen. Also, the record indicates that appellant had previously combined these items and knew of the potential damage that such an explosion could cause, and even *Page 9 
wore gloves for protection. By knowingly causing an explosion in a crowded school cafeteria, appellant created a situation likely to cause a substantial risk of direct harm both to property and to persons. In addition, appellant's actions created the potential for further harm to property and persons resulting from the panic that such an explosion could cause.
 {¶ 31} We do not find a miscarriage of justice in this case, and we cannot say that the juvenile court, as fact finder, clearly lost its way in resolving these conflicts. Accordingly, we find that the verdict of the juvenile court is not against the manifest weight of the evidence and that the verdict is supported by sufficient evidence. Appellant's first and second assignments of error are overruled.
 {¶ 32} Assignment of Error No. 3:
 {¶ 33} "THE JUVENILE COURT ERRED TO THE PREJUDICE OF THE JUVENILE-APPELLANT IN MAKING AN ADJUDICATION OF DELINQUENCY ON THE BASIS OF ILLEGAL POSSESSION OF A DEADLY WEAPON OR DANGEROUS ORDNANCE IN A SCHOOL SAFETY ZONE WHERE THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN THE ADJUDICATION"
 {¶ 34} Assignment of Error No. 4:
 {¶ 35} "THE JUVENILE COURT'S DECISION TO ADJUDICATE THE JUVENILE APPELLANT A DELINQUENT CHILD ON THE BASIS OF ILLEGAL POSSESSION OF A DEADLY WEAPON OR DANGEROUS ORDNANCE IN A SCHOOL SAFETY ZONE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 36} In his third and fourth assignments of error, appellant challenges the sufficiency and weight of the evidence underlying the juvenile court's decision adjudicating him delinquent for possession of a deadly weapon or dangerous ordnance in a school safety zone. Again, because these two assignments of error may be resolved together, we will address these issues jointly. *Page 10 
 {¶ 37} Applying the standards of review as described above, we find that the trial court's verdict adjudicating appellant delinquent for the offense of possession of a deadly weapon or dangerous ordnance in a school safety zone is also both sufficiently supported by the evidence and consistent with the weight of the evidence as presented at the adjudication hearing.
 {¶ 38} R.C. 2923.122(B) provides that "[n]o person shall knowingly possess a deadly weapon or dangerous ordnance in a school safety zone."
 {¶ 39} Pursuant to R.C. 2923.11K(2), a "dangerous ordnance" includes "any explosive or incendiary device." R.C. 2923.11(H) defines an "explosive device" to include:
 {¶ 40} "any device designed or specially adapted to cause physical harm to persons or property by means of an explosion, and consisting of an explosive substance or agency and a means to detonate it. `Explosive device' includes without limitation any bomb, any explosive demolition device, any blasting cap or detonator containing an explosive charge, and any pressure vessel which had been knowingly tampered with or arranged so as to explode."
 {¶ 41} Appellant again argues that the state failed to sufficiently establish that the plastic bottle which the tossed into the cafeteria trash can constitute an "explosive device." Appellant further asserts that the bottle which he tossed into the cafeteria trash can not be considered a "bottle bomb" because its exact chemical properties had not been retained or proven and because the bottle had melted rather than exploded.
 {¶ 42} As we have already discussed, the evidence shows that appellant knowingly combined a cleaning agent and aluminum in an effort to create a chemical reaction that resulted in an explosion. Based on appellant's previous experience with these materials and the reaction that would result from combining them, appellant knew the explosion was likely to cause substantial damage to property and persons. Based on this evidence, we cannot say that the juvenile court created a manifest miscarriage of justice in adjudicating appellant *Page 11 
delinquent on the charge of possession of a dangerous ordnance in a school safety zone. The court's verdict is not against the manifest weight of the evidence and is therefore also supported by sufficient evidence. Appellant's third and fourth assignments of error are overruled.
 {¶ 43} Assignment of Error No. 5:
 {¶ 44} "THE JUVENILE COURT ERRED TO THE PREJUDICE OF THE JUVENILE-APPELLANT WHEN IT OVERRULED HIS OBJECTION TO THE TESTIMONY OF DEPUTY HIGHFIELD RELATIVE TO THE CHEMICAL PROPERTIES OF BOTTLE BOMBS WHEN FAILING TO LAY FOUNDATION FOR EXPERT TESTIMONY."
 {¶ 45} In his final assignment of error, appellant argues that the juvenile court improperly allowed Deputy Highfield to testify as an expert witness as to the chemical properties and materials used in appellant's "bottle bomb" without laying the proper foundation for expert testimony. Appellant further argues that Deputy Highfield testified to matters beyond his personal knowledge.
 {¶ 46} The decision to admit or exclude relevant evidence lies within the sound discretion of the trial court. State v. Rivera-Carillo, Butler App. No. CA2001-03-054, 2002-Ohio-1013, citing State v. Sage (1987), 31 Ohio st.3d 173. Absent a clear abuse of that discretion, a reviewing court may not overturn a trial court's decision to admit or exclude relevant evidence. Id. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id., citing State v.Adams (1980), 62 Ohio St.2d 151.
 {¶ 47} Evid.R. 602, "Lack of Personal Knowledge" provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."
 {¶ 48} Evid.R. 702, "Testimony by Experts" provides that a witness may testify as an *Page 12 
expert only where all of the following apply:
 {¶ 49} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 50} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 51} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."
 {¶ 52} Appellant contends that Deputy Highfield's testimony, in which he described the device used by appellant, amounted to improper expert testimony beyond Deputy Highfield's personal experience or training. At the adjudication hearing, Deputy Highfield testified that "bottle bomb" devices typically do not result in a fire, but that the materials, when mixed together, are combustible, creating heat and melting the material surrounding them, which results in a smoke or fog. Deputy Highfield testified that his only experience with such devices was in responding to calls from citizens who had these same devices placed in their mailboxes.
 {¶ 53} As to the materials typically used in such devices, Highfield testified as follows:
 {¶ 54} "Usually, it's some type of metal, and the liquid it's some type of acid-form liquid. And if the metal comes in contact with it — it takes a little bit of time. It doesn't go off right away. By the — whatever the item is, if it's airtight it doesn't have any way to get any oxygen, that's why it creates it's — it's strength, this heat, and it's got to go somewhere, so it just goes out anywhere it can. And that's what makes your pop sound, but usually is not a flame. Like I said it's usually a pop and all you see is a little smoke."
 {¶ 55} Appellant's counsel objected to this testimony and argued that the deputy was not properly qualified to testify as to the materials used in such a device. In overruling *Page 13 
appellant's objection, the court explained as follows:
 {¶ 56} "Obviously, his testimony is subject to cross-examination. But my understanding — unless I'm missing something — is that the State is eliciting this testimony based upon the deputy's experience."
 {¶ 57} On cross-examination, appellant's counsel made further inquiry into Deputy Highfield's knowledge and experience with "bottle bomb" devices and the materials and chemicals required to make them. Highfield testified as follows:
 {¶ 58} "I don't know about that. I know that — the only thing I know is like mailboxes and stuff we've had in the past, and people said that we went to, or went to their house and actually taken a report from they've heard where the — like a little pop sound. They think that maybe somebody had a little cap gun outside, but they didn't see anything until the next morning. And then when they go to retrieve their mail, their — inside the mailbox was melted."
 {¶ 59} We find no abuse of discretion in the juvenile court's decision to admit Deputy Highfield's testimony. Deputy Highfield's testimony was not offered by the state as an expert witness and his testimony was limited to his personal experience and information gathered in the process of investigating prior similar incidents. As the court explained in its decision to allow the testimony, the deputy was subject to cross-examination regarding his experience. The court's decision was not arbitrary, unreasonable, or unconscionable and was therefore not an abuse of evidentiary discretion. Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 60} Judgment affirmed.
WALSH and POWELL, JJ., concur.
[1] Evidence produced at appellant's adjudication hearing demonstrated that appellant once indicated that he had used "toilet bowl cleaner" and also once indicated he had used "Red Devil" drain cleaner. *Page 1