OPINION
{¶ 1} Appellant, J.A.S., appeals his adjudication of delinquency in the Butler County Court of Common Pleas, Juvenile Division ("the juvenile court"), for the offense of sexual battery.
 {¶ 2} On October 24, 2006, appellant was charged with one count of sexual battery in violation of R.C. 2907.03, a third-degree felony if committed by an adult. The charge arose following an incident on October 14, 2006, during which appellant allegedly inserted his *Page 2 
fingers into the vagina of M.V., a 16-year-old tenth grade student, during a homecoming dance at Lakota West High School. Appellant was 16 years old at the time.
 {¶ 3} M.V. is a student at Lakota West. On the evening of October 14, 2006, M.V. attended the homecoming dance with a friend. Also in attendance that evening was appellant. M.V. and appellant did not know one another and never talked with one another that evening. M.V. and her friend were already on the dance floor when appellant joined them and started dancing behind M.V.'s friend. Two songs later, after appellant "tried to do stuff," M.V.'s friend gave M.V. a look that something was wrong. M.V. and her friend left the dance floor and went to get a drink. They then returned to the dance floor but in a different spot. Nonetheless, appellant joined them again and started dancing behind M.V.
 {¶ 4} As described by M.V., appellant was behind her, her backside was into his groin area, and the two were "grinding." At some point, appellant put his hands on M.V.'s breasts. M.V. pushed appellant's hands away and downwards to her hips. M.V. continued to dance but then, she and her friend walked away from appellant and to a different spot on the dance floor. Undeterred, appellant eventually found them and again started dancing and "grinding" behind M.V.
 {¶ 5} For a while, appellant did not touch M.V. Eventually, while dancing, appellant moved his hands to the front of M.V.'s thighs, more toward her knees; then placed one hand under and one hand over her dress; and continued to move his hands upwards toward the inner parts of her legs. Appellant then moved M.V.'s underwear to the side and digitally penetrated her vagina. M.V. testified that appellant's actions from moving his hands onto her thighs to the penetration "happened really quickly."
 {¶ 6} Following the penetration, M.V. tried to pull her friend close to stop appellant. When that did not work, M.V. whispered to her friend that she needed help. Her friend pulled her away and they went to get a drink. The friend testified that during the incident, M.V. *Page 3 
looked scared and uncomfortable. When they went to get a drink, M.V. "went crazy," seemed embarrassed and almost crying.
 {¶ 7} M.V. admitted that she did not walk away, tell appellant "no" or to stop, or move his hands away during the incident. However, M.V. testified several times that she was so shocked, she simply could not move. And while she tried to speak up, "nothing was coming out." M.V. admitted that she never told appellant not to touch her after the breast incident or when appellant had his hands on her legs towards her knees. However, M.V. also testified that she did not want or give permission to appellant to digitally penetrate her, and did not give him verbal or nonverbal indication that she approved of what was going on. When later confronted by another friend of M.V., appellant admitted "fingering" M.V.
 {¶ 8} On February 8, 2007, the juvenile court found that the state had proven the elements of sexual battery under R.C. 2907.03(A)(1) and (3), and adjudicated appellant a delinquent child. The case was then transferred to the Warren County Court of Common Pleas, Juvenile Division, for disposition, pursuant to R.C. 2151.271. The Warren County Juvenile Court sentenced appellant to 30 days in the Warren County Juvenile Detention Center and designated him as a juvenile sex offender registrant.
 {¶ 9} Appellant appeals, raising the following assignment of error:
 {¶ 10} "THE TRIAL COURT'S DECISION WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} The standards of review applied in determining whether a juvenile court's finding of delinquency is supported by sufficient evidence and/or is against the manifest weight of the evidence are the same standards applied in adult criminal convictions. In re P.G., Brown App. No. CA2006-05-009, 2007-Ohio-3716, ¶ 13-14.
 {¶ 12} In reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court examines the evidence in order to "determine whether such evidence, if *Page 4 
believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Smith, 80 Ohio St.3d 89, 113,1997-Ohio-355. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. In such a review, "a reviewing court must not substitute its evaluation of the witnesses' credibility for that of the trier of facts." In re P.G. at ¶ 13.
 {¶ 13} In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. When reviewing the evidence under a manifest weight challenge, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The discretionary power to overturn a conviction based on the manifest weight of the evidence is to be invoked only in those extraordinary circumstances to correct a manifest miscarriage of justice where the evidence presented weighs heavily in favor of acquittal. Thompkins at 387.
 {¶ 14} Because a finding that a conviction is supported by the manifest weight of the evidence also necessarily includes a finding that it is supported by sufficient evidence, the determination that a juvenile court's delinquency finding is supported by the manifest weight of the evidence will also be dispositive of an appellant's sufficiency claim. In re P.G. at ¶ 16, citing State v. Lombardi, Summit App. No. 22435, 2005-Ohio-4942.
 {¶ 15} Appellant argues that the juvenile court's finding that he committed sexual battery is not supported by sufficient evidence and is against the manifest weight of the *Page 5 
evidence. Specifically, appellant argues that the state failed to show beyond a reasonable doubt that he acted knowingly under R.C.2907.03(A)(1) or (3); that he coerced M.V. under R.C. 2907.03(A)(1) since there was no evidence of force; or that M.V. was unaware that the sexual battery was being committed as required under R.C. 2907.03(A)(3).
 {¶ 16} Appellant was charged with sexual battery in violation of R.C.2907.03 which provides, in relevant part, that: "No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * (1) the offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution; * * * (3) the offender knows that the other person submits because the other person is unaware that the act is being committed." R.C. 2907.03(A)(1), (3). "Sexual conduct," for purposes of R.C. 2907.03, includes the insertion, however slight, of any part of the body into the vaginal cavity of another. R.C. 2907.01(A).
 {¶ 17} R.C. 2901.22(B) defines "knowingly" as: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." To act knowingly, a defendant merely has to be aware that the result may occur. State v. Nutekpor, Wood App. No. WD-05-062, 2006-Ohio-4641, ¶ 16, citing State v. Edwards (1992), 83 Ohio App.3d 357.
 {¶ 18} The Revised Code does not define "coercion;" however, the commentary to R.C. 2907.03 states that sexual conduct by coercion "is somewhat broader than sexual conduct by force." Coercion for purposes of sexual battery does not by necessity include force or threat of force, although it may. See State v. Wilkins (1980), 64 Ohio St.2d 382 (finding that because force or threat of force always constitute coercion, sexual battery under R.C. 2907.03[A][1] is a lesser included offense of rape under R.C. 2907.02[A][2]); State v. Tolliver (1976), 49 Ohio App.2d 258. However, the state need not prove force or the threat of *Page 6 
force to prove sexual battery. State v. Johnson, 112 Ohio St.3d 210,2006-Ohio-6404, ¶ 268.
 {¶ 19} Coercion for purposes of sexual battery has been defined as "to compel by pressure." See In re Jordan (Sept. 12, 2001), Lorain App. No. 01CA007804. Webster's Third New International Dictionary (1993) defines "to coerce" in relevant part as "to restrain, control, or dominate, nullifying the individual will or desire," "to compel to an act by force, threat, or other pressure," and "to bring about * * * by force, threat, or other pressure." Id. at 439. Black's Law Dictionary (5th Ed.1979), in turn, states that coercion "may be actual, direct, or positive, as where physical force is used to compel act against one's will, or implied, legal, or constructive, as where one party is constrained by subjugation to other to do what his free will would refuse." Id. at 234.
 {¶ 20} The definition of "knowingly" in R.C. 2901.22(B) applies to R.C. 2907.03(A)(3). We also note that in prosecutions under R.C.2907.03(A)(3), the victim is typically either asleep or unconscious, and then awakes to discover the offender engaging in sexual conduct with him or her. State v. Antoline, Lorain App. No. 02CA008100, 2003-Ohio-1130, ¶ 55.
 {¶ 21} Upon reviewing the record, we find that the juvenile court did not err by finding that appellant committed sexual battery under R.C.2907.03(A)(1). The record clearly establishes that appellant engaged in sexual conduct with M.V. and that they were not married. The incident took place during a homecoming dance at M.V.'s high school, where she is a tenth grade student, among her peers, classmates, and friends. Prior to the incident, M.V. and her friend twice walked away from appellant and went to a different spot on the dance floor. Undeterred, and although the place was dark and crowded, appellant twice managed to find them and started "grinding" behind M.V. One such time happened after M.V. removed appellant's hands from her breasts. Then, the incident happened.
 {¶ 22} It is true that appellant never saw M.V.'s face during the incident and that she never told him "no" or to stop, or walked away during the incident. However, M.V. testified *Page 7 
that she never gave permission to appellant to digitally penetrate her, and never gave him any oral or non-verbal indications that she approved of what was going on. M.V. further testified that appellant's actions during the incident happened very quickly and that she was unable to speak or move. M.V.'s description of her inability to react verbally or physically during and after the incident clearly indicates she was "frozen" and overwhelmed by appellant's actions. In its brief, the state points out how appellant "chose to inappropriately touch her in a public place where to act out would have occasioned upon M.V. a great deal of ridicule and embarrassment," and would have directed "others' attention towards her and the humiliating acts being forced upon her." Indeed, M.V.'s friend testified that when M.V. asked for her help, she "grabbed some of [her] friends * * * so it didn't look like anything was wrong, because I didn't want to cause any drama. So, I grabbed them and it looked like a train * * * like people lined up." Appellant was aware his conduct was going to coerce or compel M.V. to submit to sexual conduct against her will.
 {¶ 23} We are not persuaded, however, that appellant committed sexual battery under R.C. 2907.03(A)(3). Under this provision, a victim submits to sexual conduct because he or she is unaware that the act is beingcommitted (as opposed to the victim is unaware that the act is going to be committed). As noted earlier, in prosecutions under R.C.2907.03(A)(3), the victim is typically either asleep or unconscious, and then awakes to discover the offender engaging in sexual conduct with him or her. In the case at bar, although the incident happened very quickly and caught M.V. off guard, her testimony shows that she was aware of the sexual conduct as it was happening.
 {¶ 24} In accordance with the standards of review articulated above, we find that the juvenile court's finding that appellant committed sexual battery in violation of R.C. 2907.03(A)(1) was supported by sufficient evidence and was not against the manifest weight of the evidence. Appellant's assignment of error is overruled. *Page 8 
 {¶ 25} Judgment affirmed.
 BRESSLER and POWELL, JJ., concur. *Page 1