OPINION
{¶ 1} Appellant, C.W.K., appeals his delinquency adjudication in the Butler County Court of Common Pleas, Juvenile Division, for the offense of rape. We affirm the decision of the juvenile court.
 {¶ 2} A complaint was filed against appellant on January 22, 2007 alleging one count of rape in violation of R.C. 2907.02(A)(1)(b), a first-degree felony if committed by an adult. The charge arose from an incident in which appellant inserted his finger, or fingers, into the *Page 2 
vagina of an 11-month-old child. Appellant was 15 years old at the time of the incident.
 {¶ 3} During the bench trial, there was testimony that on the afternoon of January 9, 2007, Casey L, along with her 11-month-old daughter, visited Danielle K. Shortly after Casey arrived at Danielle's home with her daughter, Danielle asked Casey if she wanted to walk to the store.[1] Appellant agreed to watch the child while Casey and Danielle were gone. Casey put her daughter in her walker and left the child in the sole care of appellant.
 {¶ 4} What occurred during the time Casey and Danielle were at the store is in dispute.
 {¶ 5} According to appellant's testimony, after Casey and Danielle left, the child began to cry. Appellant picked her up and tried to determine what was wrong. Appellant could not find any obvious reason why the child was crying and believed she dirtied her diaper. However, appellant stated there was no odor of urine or feces coming from the child. Appellant then decided to change the child's diaper even though he had never changed a diaper, or been taught how to change a diaper.
 {¶ 6} Appellant got a piece of toilet paper, pulled down the child's clothes, undid the child's diaper, and exposed the child's private area. After examining the child, appellant still did not see, or smell, any urine or feces. Despite any signs that she had gone to the bathroom, appellant wiped her private area three or four times with toilet paper. Appellant never got a new diaper or attempted to contact Casey, the child's mother, who was only a short distance away.
 {¶ 7} After appellant wiped the child, he put her diaper back on and buttoned her clothes. Appellant claimed he did not see any blood. When Casey and Danielle came back, he handed the child to Casey, and went to the bathroom to take a shower. *Page 3 
 {¶ 8} According to Casey, when she came back from the store, her daughter was crying, screaming and attempting to stretch out of the lap of appellant. Casey testified that appellant was scared when she walked through the living room door. Casey also testified that her daughter's clothes were unbuttoned and there was blood on the side of her daughter's leg and diaper. After opening the diaper, Casey discovered "smeared blood all over."
 {¶ 9} Immediately after appellant began to shower, Danielle banged on the bathroom door and asked appellant what he had done to the child. Appellant said he tried to change the child's diaper and he might have, as Casey testified, "stuck the tissue in her too far."
 {¶ 10} Casey took her daughter to Cincinnati Children's Hospital, where a medical evaluation and rape kit were performed. The evaluation revealed a tear on the victim's hymen, bleeding, and swelling to the genitals. Casey brought her daughter to the Mayerson Center for further treatment on two occasions.
 {¶ 11} The state called Dr. Robert Shapiro as an expert witness to testify about the child's injuries. Dr. Shapiro testified, with the help of photographs, that the injury was a result of "direct trauma to her hymen," which would not be caused by cleaning. He further stated that the injury to the child was caused by "some significant force," and, based on his 25 years of experience, was "less than typical." Dr. Shapiro, also noted that he had never had a child brought to him with the explanation that an injury to the hymen was caused during cleaning. However, he did testify that "theoretically" the injury could have occurred during cleaning, and, although unlikely, there was "nothing that would keep that from happening."
 {¶ 12} On August 14, 2007, the juvenile court found that the state had proven the elements of rape under R.C. 2907.02(A)(1)(b) beyond a reasonable doubt, and adjudicated appellant a delinquent child. The court sentenced appellant to probation and ordered him into the Butler County Regional Rehabilitation Center program for an indefinite period of time. *Page 4 
 {¶ 13} Appellant appeals his delinquency adjudication, raising a single assignment of error:
 {¶ 14} Assignment of error No. 1:
 {¶ 15} "THERE WAS INSUFFICIENT EVIDENCE TO FIND APPELLANT GUILTY OF RAPE WHEN THE STATE'S EXPERT WITNESSES TESTIFIED THAT INJURIES TO THE VICTIM COULD HAVE OCCURRED IN THE MANNER THE DEFENDANT TESTIFIED TO."[2]
 {¶ 16} Appellant argues that the juvenile court's finding is not supported by sufficient evidence. Specifically, appellant argues that the evidence presented was insufficient due to Dr. Shapiro's testimony that the child's injury could have occurred in the manner appellant testified to; namely, wiping the child's genitals three or four times. This argument lacks merit.
 {¶ 17} The standard of review applied in determining whether a juvenile court's finding of delinquency is supported by sufficient evidence is the same standard as applied in adult criminal convictions.In re P.G., Brown App. No. CA2006-05-009, 2007-Ohio-3716, ¶ 13.
 {¶ 18} An appellate court, in reviewing the sufficiency of the evidence supporting a criminal conviction, examines the evidence in order to "determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." Id., quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. After examining the evidence, in a light most favorable to the prosecution, the appellate court must determine if "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. While making this determination "a reviewing *Page 5 
court must not substitute its evaluation of the witnesses' credibility for that of the trier of facts." In re P.G. at ¶ 13. Proof beyond a reasonable doubt is defined as "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." R.C. 2901.05(D).
 {¶ 19} Appellant was charged with rape in violation of R.C. 2907.02(A)(1)(b), which prohibits a person from engaging in sexual conduct with another, not a spouse, when the person is less than 13 years of age, regardless of whether or not the offender knows the age of the person. "Sexual conduct," defined by R.C. 2907.01(A), includes "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another" without privilege to do so.
 {¶ 20} After reviewing the record, we find appellant's conviction was based on sufficient evidence to support a finding that the state proved the essential elements of the offense beyond a reasonable doubt. The state presented evidence to show, and the record indicated, appellant was not married to the child and the child was under the age of 13. At issue on review is whether appellant engaged in sexual conduct with the child.
 {¶ 21} In this case, when Casey and Danielle were gone, the record clearly indicated appellant touched the child in and around her genitals. Furthermore, appellant admitted to touching the child and he "might have stuck the tissue in her too far" during his alleged attempt to change her diaper. The evidence also indicated that appellant's admitted acts led to swollen hymenal tissue, bruising, discoloration, and tearing of the child's hymen. As the juvenile court stated, this touching occurred even though "there's nothing there, there's nothing to clean up, there's nothing to wipe up * * *. No cleaning whatsoever here." We find no error in the juvenile court's conclusion.
 {¶ 22} The state also presented expert testimony of Dr. Robert Shapiro, who described the injury to the child as "direct trauma to her hymen." Dr. Shapiro testified, based *Page 6 
on his 25 years of experience, that the possibility was "less than typical" that the injury was actually caused from cleaning. Instead, he testified the injury "would indicate that there was some significant force applied * * *" to her hymen. The state further provided evidence that, even if appellant attempted to clean her as he described, the injury was highly unlikely to occur. By taking into account all of the evidence presented, we find there was sufficient evidence presented for the juvenile court to conclude that all of the essential elements of rape were proven beyond a reasonable doubt.
 {¶ 23} Because the evidence was sufficient to support a finding that appellant committed the charged offense beyond a reasonable doubt, appellant's sole assignment of error is overruled.
 {¶ 24} Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] Although there is some dispute as to how long it would take to walk to the store, the parties testified that the walk to and from the store would last no longer than five to eight minutes.
[2] Appellant only argues that there was "insufficient evidence" and not that the conviction was against the manifest weight of the evidence. A challenge to the manifest weight of the evidence differs from a challenge to the sufficiency of the evidence. State v. McKnight,107 Ohio St.3d 101, 112, 2005-Ohio-6046. Specifically, when reviewing a manifest weight of the evidence challenge, the appellate court "reviews the entire record, weighing the evidence and all reasonable inferences that can be drawn from it." Id. This includes "considering the credibility of witnesses. * * *." Id. Therefore, because appellant's only assignment of error is based on "insufficient evidence," and not on the manifest weight of the evidence, the court will review the juvenile courts decision based on the sufficiency of the evidence only. *Page 1