---

**In re S.R.**

[Cite as *In re S.R.*, 182 Ohio App.3d 803, 2009-Ohio-3156.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. 2009–01–005.

Decided June 29, 2009.

[REDACTED]

Rachel A. Hutzel, Warren County Prosecuting Attorney, and Mary K. Martin, for appellee.

Bryan K. Penick, for appellant, S.R.

RINGLAND, Judge.

{¶ 1} Appellant, S.R., appeals an adjudication of delinquency by the Warren County Court of Common Pleas, Juvenile Division, for unlawful possession of a dangerous ordnance and inducing panic.

{¶ 2} During the evening of October 28, 2007, appellant and a friend went to a pool complex located near appellant's neighborhood in Springboro. At the time, the pool was closed for the season and the adjoining clubhouse and parking lot were completely vacant. Appellant, an Eagle Scout aspirant and student near the top of his high school class, created a "Works bomb" or "bottle bomb" comprised of a plastic water bottle, "The Works" toilet bowl cleaner, and aluminum foil; a process he first witnessed while attending a Boy Scout bonfire. The combination of cleaner and foil creates a chemical reaction that when placed in a capped plastic bottle causes the bottle to rupture. Appellant combined the materials in the bottle and placed it in a grassy area adjacent to the parking lot.

{¶ 3} A couple who lived in the neighborhood were walking their dogs at the time and heard the loud noise caused by the rupturing bottle. They observed appellant and his friend get into a vehicle with a loud muffler and drive away from the location. The husband decided to inspect the area to determine the cause of the noise. He observed the mutilated bottle, but found no property damage. He also noticed a second water bottle on the premises that appeared to be about three-quarters full. He returned to his wife, who had remained on the sidewalk. The couple then continued on their walk. The wife stopped at a neighbor's house while the husband proceeded to their home to return the dogs. Approximately 15 minutes later, the wife decided to telephone the police while at the neighbor's home to report the incident. After dropping the dogs off, the husband returned to the neighbor's house and learned that his wife had called the

police. The husband then went to the pool area to offer any assistance needed by the police.

{¶ 4} An officer from the Springboro Police Department responded to the call. The husband provided a description of what he had observed, including a general description of the vehicle. The officer observed the same remnants of the plastic bottle and some pieces of aluminum foil. The fire department also responded to the scene to investigate the second water bottle, which was determined to contain only water.

{¶ 5} As the officer processed the scene, he noticed a vehicle matching the description provided by the husband drive past the pool complex. The officer initiated a traffic stop of the vehicle driven by appellant's friend. Upon approaching the vehicle, the officer observed water bottles, a roll of aluminum foil, and a bottle of "The Works" cleaning solution in the rear of the vehicle. The officer ordered the boys out of the car and began asking about the incident. Appellant admitted setting off the bottle. The boys were permitted to call their parents and were placed in the back seat of the squad car. Once appellant's parents arrived, appellant was asked to write a statement. Appellant claims that the officer threatened that if he did not write a statement, he would be taken to the juvenile detention center. The officer denies the allegation, claiming he never threatened appellant to provide a statement. Appellant provided the written statement, admitting that he had detonated the bottle but stating that he "didn't realize it was a crime." The statement also says, "I had no intent to hurt or scare anyone."

{¶ 6} Appellant was charged with illegal possession of a dangerous ordnance in violation of R.C. 2923.17(A) and inducing panic in violation of R.C. 2917.31(A)(3). Appellant filed motions to suppress and dismiss, which were overruled by the magistrate. Following trial, the magistrate adjudicated appellant delinquent on both charges. Appellant received a suspended commitment of six months with the Ohio Department of Youth Services, was placed on reporting probation for 90 days, and was required to make pro rata restitution. Appellant filed timely objections to the magistrate's decision, which were overruled by the trial court. Appellant timely appeals, raising five assignments of error.

{¶ 7} Assignment of error No. 1:

{¶ 8} "The trial court erred in overruling appellant's motion to dismiss."

{¶ 9} Assignment of error No. 2:

{¶ 10} "The trial court erred in overruling appellant's Crim.R. 29 motion for acquittal."

{¶ 11} Appellant combines his first and second assignments of error. In both assignments, appellant argues that the facts are insufficient to support a finding

of delinquency because the "bottle bomb" at issue in this case is not a "dangerous ordnance" as defined under R.C. 2923.17. Appellant directs the court to the various exceptions listed under "dangerous ordnance" as provided in the Revised Code. Further, appellant argues that the state failed to prove that the bottle bomb in this case meets the elements of a "dangerous ordnance."

{¶ 12} "Dangerous ordnance" includes "any explosive device or incendiary device." R.C. 2923.11(H).

## I. DEFINITIONS AND RELATED EXCEPTIONS

{¶ 13} The difficulty in analyzing whether a specific instrument constitutes a "dangerous ordnance" results from the myriad of applicable definitions and layered exceptions listed separately in the Revised Code.

**"Explosive Device"**

{¶ 14} An "explosive device" is defined as "any device designed or specially adapted to cause physical harm to persons or property by means of an explosion, and consisting of an explosive substance or agency and a means to detonate it. 'Explosive device' includes without limitation any bomb, any explosive demolition device, any blasting cap or detonator containing an explosive charge, and any pressure vessel that has been knowingly tampered with or arranged so as to explode." R.C. 2923.11(H).

**Explosive**

{¶ 15} The Revised Code further provides a definition for "explosive," which also contains exceptions. "Explosive" is defined as "any chemical compound, mixture, or device, the primary or common purpose of which is to function by explosion. 'Explosive' includes all materials that have been classified as class A, class B, or class C explosives by the United States department of transportation in its regulations and includes, but is not limited to, dynamite, black powder, pellet powders, initiating explosives, blasting caps, electric blasting caps, safety fuses, fuse igniters, squibs, cordeau detonant fuses, instantaneous fuses, and igniter cords and igniters." R.C. 2923.11(M).

{¶ 16} " 'Explosive' does not include 'fireworks,' as defined in section 3743.01 of the Revised Code, or any explosive that is not subject to regulation under the rules of the fire marshal adopted pursuant to section 3737.82 of the Revised Code." Id. The legislature has recently altered the definition and exceptions to "explosive" under R.C. 2923.11(M), effective September 23, 2008. The revised version has changed the classifications of explosive materials from "class A, class B, or class C explosives" to "division 1.1, division 1.2, division 1.3, or division 1.4 explosives" to reflect the revised federal classifications of explosive materials.

{¶ 17} More significantly though, as will be explained later in the opinion, R.C. 2923.11(M) changed the exceptions of "explosive," declaring that "explosive" does not include fireworks or any "substance or material otherwise meeting the definition of explosive set forth in this section that is manufactured, sold, possessed, transported, stored, or used in any activity described in section 3743.80 of the Revised Code, provided the activity is conducted in accordance with all applicable laws, rules, and regulations, including, but not limited to, the provisions of section 3743.80 of the Revised Code and the rules of the fire marshal adopted pursuant to section 3737.82 of the Revised Code."

{¶ 18} Since the alleged offense occurred prior to the effective date and the legislature did not expressly provide for the retroactive application of the revised version of R.C. 2923.11(M), the former version is applicable to the case at bar. *Wilson v. AC & S, Inc.*, 169 Ohio App.3d 720, 2006-Ohio-6704, 864 N.E.2d 682, ¶ 69, citing *State v. Cook*, 83 Ohio St.3d 404, 410, 700 N.E.2d 570.

**Dangerous–Ordnance Exceptions**

{¶ 19} In addition to the exclusions provided under the definition of "explosive," R.C. 2923.11(L)(6) also provides specific exclusions to "dangerous ordnance."

{¶ 20} "Dangerous ordnance" does not include "[a]ny device that is expressly excepted from the definition of a destructive device pursuant to the 'Gun Control Act of 1968,' 82 Stat. 1213, 18 U.S.C. 921(a)(4), as amended, and regulations issued under that act." R.C. 2923.11(L)(6). Accordingly, to determine whether the bottle bomb in this case is a "dangerous ordnance," the court must also examine the federal Gun Control Act.

{¶ 21} The Gun Control Act of 1968 provides, "The term 'destructive device' *shall not include any device which is neither designed nor redesigned for use as a weapon*; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of Title 10; or any other device which the Attorney General finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting, recreational or cultural purposes." (Emphasis added.) Section 921(a)(4), Title 18, U.S.Code.

## II.  ANALYSIS

{¶ 22} Various courts in Ohio, including this court, have previously examined the criminality of bottle bombs. As provided in R.C. 2923.11(H), to prove that the subject matter is an "explosive device" and, therefore, a "dangerous ord-

nance," the state must demonstrate three elements: the device must (1) contain an explosive substance or agency, (2) have a means to detonate, and (3) be "designed or specifically adapted" to cause physical harm to persons or property. Further, the device must not fall within one of the enumerated exclusions listed under the definitions of "dangerous ordnance" or "explosive."

{¶ 23} With regard to the first element, that the offending device contain an explosive substance or agency, R.C. 2923.11(M) defines "explosive" as any "mixture * * * the primary or common purpose of which is to function by explosion." The primary or common purpose in combining "The Works" with foil in a capped plastic bottle is to cause the bottle to rupture.

{¶ 24} Next, regarding the "means to detonate" requirement, in *In re Smith* (1995), Paulding App. No. 11–95–9, 1995 WL 737921, the Third District Court of Appeals concluded that a bottle bomb's "means to detonate" resulted from its function as a "pressure vessel which has been knowingly tampered with or arranged as to explode." Id. at *2. Appellant disputes the conclusion that a bottle bomb constitutes a "pressure vessel," noting that no actual definition for "pressure vessel" is provided under the weapons-control definitions. The only definition for "pressure vessel" in the Revised Code appears under the labor and industry provisions. Under the section for "Boiler Definitions," "pressure vessel" is defined as "a container for the containment of pressure, either internal or external. This pressure may be obtained from an external source or by the application of heat from a direct or indirect source or any combination thereof." R.C. 4104.01(G). It is unnecessary for this court to analyze this argument, due to our findings below.

{¶ 25} In *In re P.G.*, Brown App. No. CA2006–05–009, 2007-Ohio-3716, 2007 WL 2077147, this court held that a bottle bomb with the same chemical composition was a "dangerous ordnance." Id. at ¶ 42. In *P.G.*, the defendant detonated the bomb in a trash can in his high school cafeteria. Id. at ¶ 3. In determining that the bottle bomb was a "dangerous ordnance," this court reviewed the definition of "explosive device" and concluded, based upon P.G.'s knowledge and belief of the chemical composition, that the bottle bomb was a dangerous ordnance. Id. at ¶ 42. This court reasoned as follows: "[A]ppellant knowingly combined a cleaning agent and aluminum foil in an effort to create a chemical reaction that resulted in an explosion. Based on appellant's previous experience with these materials and the reaction that would result from combining them, appellant knew the explosion was likely to cause substantial damage to property and persons [when detonated in the school cafeteria trash can.]" Id.

{¶ 26} Similarly, in *In re Travis* (1996), 110 Ohio App.3d 684, 675 N.E.2d 36, the Tenth District Court of Appeals also found a bottle bomb to be a "dangerous ordnance." The court reasoned, a "two-liter soda pop bottle, by itself, will not

explode. However, when toilet bowl cleaner, containing hydrochloric acid, and aluminum foil are combined inside the bottle, and the bottle is sealed and shaken, the bottle has become a device designed or adapted to explode. Furthermore, the record indicates that the explosion of such a device can cause physical harm to persons or property. * * * If human beings are in close proximity when the device explodes, there is a high probability that they will be hurt." Id. at 690, 675 N.E.2d 36.

{¶ 27} In contrast, in *State v. Dommer*, 162 Ohio App.3d 404, 2005-Ohio-4073, 833 N.E.2d 796; and *State v. Young*, Stark App. No. 2005CA00009, 2005-Ohio-3925, 2005 WL 1802509, the Fifth Appellate District declined to find criminal culpability for bottle bombs based upon the explicit exclusions for "explosive" in R.C. 2923.11(M). Both *Dommer* and *Young* involve the same incident, wherein the defendants created a bottle bomb and detonated it on a sidewalk near a school. Id. at ¶ 2. The defendants were charged with illegally manufacturing or processing explosives under R.C. 2923.17(B); a different charge than illegal possession of a dangerous ordnance, but the same applicable definition of "explosive." Id. at ¶ 9. The Fifth Appellate District concluded that the bottle bomb is not an "explosive" due to the exclusions included in R.C. 2923.11(M). The court explained: "[T]he term 'Explosive' does not include 'fireworks,' as defined in section 3743.01 of the Revised Code, or any explosive that is not subject to regulation under the rules of the fire marshal * * *. [The state] does not dispute that none of the materials in this case that were used to make the bottle bomb, including toilet bowl cleaner containing hydrochloric acid, are subject to the rules and regulations of the fire marshal. Nor, as noted by appellant, are they classified as an 'explosive' by the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives. Rather, the materials used in the case sub justice were all common household items readily available at a grocery store." Id. at ¶ 10.

{¶ 28} Statutory definitions and penalties must be "strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A); *Harrison v. Ohio* (1925), 112 Ohio St. 429, 147 N.E. 650; *State v. Maxson* (1978), 54 Ohio St.2d 190, 8 O.O.3d 173, 375 N.E.2d 781; *In re B.S.* (1998), 103 Ohio Misc.2d 34, 39, 725 N.E.2d 362. In attempting to regulate dangerous ordnances, the legislature has created a labyrinthine scheme of applicable definitions and exclusions that must be thoroughly examined to determine whether criminal liability applies to the device at issue. Accordingly, to constitute a dangerous ordnance, the bottle bomb must meet the criteria of "explosive device" and not be exempted from the exclusions of "dangerous ordnance" and "explosive."

{¶ 29} After review of the record, along with the applicable definitions and exclusions, we conclude that the bottle bomb in this case cannot be classified as a dangerous ordnance.

{¶ 30} As described in *Dommer* and *Young*, the exclusions to "explosive" are equally controlling in the case at bar. "Explosive" does not include (1) "fireworks" or (2) any explosive that is not subject to regulation by the fire marshal. R.C. 2923.11(M). Like *Dommer* and *Young*, there is no evidence in this case that the substances used in appellant's bottle bomb were subject to regulation by the fire marshal. *United States v. Oba* (C.A.9, 1971), 448 F.2d 892, 894.

{¶ 31} More significantly, though, the legislature recently changed the exclusions to "explosive," no longer exempting all substances not subject to regulation by the fire marshal. It is apparent that the legislature perceived problems with these statutory exclusions and corrected the ambiguities. However, as described above, the effective date of the revision occurred after the events of this case and, as a result, the exclusions applicable in *Dommer* and *Young* remain applicable in this matter.

{¶ 32} Further, as an element of "explosive device," the legislature requires that the device be "designed or specifically adapted" to cause damage to persons or property. "Knowingly" is the culpable mental state required under R.C. 2923.17(A). *Travis*, 110 Ohio App.3d at 690, 675 N.E.2d 36. It is insufficient to merely show that the device is capable of causing damage to persons or property. Rather, the definition requires that the device be actually "designed or specifically adapted" for that purpose.

{¶ 33} Similarly, the definition for "dangerous ordnance" explicitly excludes any device that is expressly exempted from the definition of "destructive device" in the federal Gun Control Act. R.C. 2923.11(L)(6). The Gun Control Act specifically excludes any device that is not designed or redesigned as a weapon. Section 921(a)(4), Title 18, U.S.Code. As a result, for the device to constitute a "dangerous ordnance," it must be designed for use as a weapon. *In re Joseph S.* (2005), 13 Neb.App. 636, 651, 698 N.W.2d 212.

{¶ 34} Under the facts of this case, there is no evidence to support a finding that appellant intended or knowingly used the bottle bomb as a weapon or constructed the bomb to cause damage to any person or property. The state in this case presented an expert who testified about the composition and the common use of bottle bombs such as the one used in the case at bar. The expert testified about the chemical reaction created by the mixture and the explosive effect. Further, the expert testified that these bombs are capable of causing damage, noting that bottle bombs are commonly used to detonate mail boxes and other property.

{¶ 35} All of these theoretical uses cited by the state are irrelevant to the case at bar, since appellant did not use the bomb in this case in the manner the expert described. Rather, the facts of this case demonstrate that the bomb was neither used as a weapon nor "designed or specifically adapted" to cause damage to

persons or property. Appellant went to a remote location, constructing the device on a grassy area near the parking lot at a vacant pool complex. Moreover, no actual damage resulted from the detonation of the bomb. The exhibits introduced by the state of the location and the device reveal no damage to the surrounding area. Mere capability of causing damage does not create liability for possession of a dangerous ordnance, since the definitions and exclusions require the device to be "designed or specifically adapted" to cause damage and used as a weapon.

{¶ 36} In *P.G.*, *Travis*, and *Smith*, the courts never examined the various applicable exclusions to "dangerous ordnances." Despite this, no conflict exists between this case and our previous decision in *P.G.* In *P.G.*, evidence existed that the bottle bombs were "weapons" and "designed or specifically adapted" to cause harm to persons or property. Specifically, this court found that the defendant detonated the device in the garbage can in the crowded cafeteria at his high school. 2007-Ohio-3716, 2007 WL 2077147 at ¶ 2. Similarly, no conflict exists with *Smith*, because Smith combined the ingredients, then threw and kicked the bottle bombs in a destructive manner. 1995 WL 737921 at *1.

{¶ 37} However, our conclusion departs from the Tenth Appellate District's decision in *Travis*. In *Travis*, the defendant detonated a bottle bomb in a public park. 110 Ohio App.3d at 686, 675 N.E.2d 36. There are few details about the incident, the park's surroundings, or whether other individuals were present nearby. Yet the Tenth Appellate District found culpability while also concluding that Smith "did not intend to hurt anyone or cause any property damage." Id. at 690, 675 N.E.2d 36. The *Travis* court reasoned: "[T]he record indicates that the explosion of such a device can cause physical harm to persons or property. * * * Appellant was aware that the device would explode and cause a loud noise. * * * It is hard to comprehend that appellant did not know what he was doing was wrong. Appellant knew the device would explode * * * when Officer Kerin asked appellant if he was the person who set off the 'bomb thing,' appellant responded that he was sorry. Appellant knew that he was doing something that he should not be doing. The fact that appellant did not fully comprehend the gravity of his actions is not violative of his rights." Id. at 690–691, 675 N.E.2d 36.

{¶ 38} In affirming Smith's adjudication, the Tenth Appellate District disregarded the actual elements of the offense. Instead, the court focused upon the capability of bottle bombs, the general notion that detonating a bottle bomb is "wrong," and Smith's general admission that the act was "wrong," rather than examining whether the bomb was "designed or specifically adapted" to cause damage and despite the court's conclusion that Smith did not use the bomb in that manner.

{¶ 39} Simply because an act is "wrong," does not automatically result in culpability; the act must still satisfy the elements of the crime. R.C. 2901.03; R.C. 2901.21(A). Appellant in this case knew the device would rupture and create a loud noise, based upon previous experience observing the creation of a "Works bomb." In his written statement, appellant acknowledged that he had made a "mistake" and was "sorry" for detonating the bottle. It was wrong for appellant to detonate the bottle bomb, but the evidence does not support a delinquency adjudication for possession of a dangerous ordnance.

{¶ 40} We recognize the societal concerns that bombs present in today's world. A bottle bomb can be a dangerous ordnance, as in *P.G.*, when it is detonated for destructive purposes and as a weapon. Appellant's actions in this case may constitute a different criminal violation, but it does not satisfy the definition of a "dangerous ordnance." If the legislature wished to outlaw or classify all bottle bombs as dangerous ordnances, as done in other states, it could have explicitly done so or removed the various exceptions. See Cal.Penal Code Ann. 12301(a)(6); S.C.Code Ann. 16–8–10; Tenn.Code Ann. 39–17–1301(3)(B)(ii); Ariz.Rev.Stat. Ann. 13–3101(A)(7). In contrast, see Indiana Code Ann. 35–47.5–2–4 and Neb. Rev.Stat. 28–1213(7)(b), which create statutory schemes similar to Ohio's, excluding devices not classified as weapons. Yet the Ohio legislature has refused to do so and instead defines "dangerous ordnances" as devices designed or specifically adapted to cause injury or damage and exempts devices that are not used as weapons; creating, at most, an ambiguity in this case. See *Joseph S.*, 13 Neb.App. 636, 698 N.W.2d 212. And if such ambiguity exists, it must be strictly construed against the state. R.C. 2901.04(A).

{¶ 41} Appellant's first and second assignments of error are sustained.

{¶ 42} Assignment of error No. 5:

{¶ 43} "The trial court's finding that appellant violated R.C. 2923.17(A) and R.C. 2917.31(A)(3) is against the manifest weight of the evidence."

{¶ 44} Under his fifth assignment of error, appellant challenges the weight of the evidence for both charges. Having already found that the evidence in this case does not support the delinquency finding for unlawful possession of a dangerous ordnance, we need only address appellant's argument in the context of the inducing-panic charge.

{¶ 45} Appellant was charged with inducing panic under R.C. 2917.31(A)(3), which provides, "No person shall cause the evacuation of any public place, or otherwise cause serious public inconvenience or alarm, by * * * committing any offense, with reckless disregard of the likelihood that its commission will cause serious public inconvenience or alarm." R.C. 2917.31(A)(3).

{¶ 46} Having found that no predicate offense was committed by appellant, the delinquency finding for inducing panic is against the manifest weight of the evidence. *State v. Cordell* (1992), 62 Ohio Misc.2d 542, 546, 604 N.E.2d 1389.

{¶ 47} Appellant's fifth assignment of error is sustained to the extent indicated.

{¶ 48} Assignment of error No. 3:

{¶ 49} "The trial court erred in overruling appellant's motion to suppress."

{¶ 50} Assignment of error No. 4:

{¶ 51} "The trial court erred in overruling appellant's motion to dismiss R.C. 2923.17(A), unlawful possession of a dangerous ordnance, as unconstitutional."

{¶ 52} Appellant's remaining assignments of error are overruled as moot.

{¶ 53} The judgment is reversed, and appellant is discharged.

Judgment reversed.

YOUNG, P.J., concurs.

HENDRICKSON, J., concurs separately.

HENDRICKSON, Judge, concurring separately.

{¶ 54} I reluctantly concur in the end result reached by the majority in reversing the lower court's determination that a "bottle bomb" is a dangerous ordnance. The majority has set forth a very thorough and sound analysis of the primary issue in this case, that is, whether a "bottle bomb" as used by appellant falls within the intended scope of the statutory definitions of "dangerous ordnance," "explosive device," and "explosive." See R.C. 2923.11(K), (H), and (M), respectively. Although I believe, especially following the terrorist attacks of September 11, 2001, that the legislative intent and purpose behind enacting these statutes would certainly encompass an explosive device such as the one used in this case, that intent and purpose is clearly lost in the statutory ambiguities outlined in the majority's opinion. Thus, until the legislature chooses to directly address these ambiguities and unequivocally make its intent clear, we are unfortunately stuck with the current, confusing statutory scheme.