{¶ 1} Defendant-appellant, G.R., [1] appeals his delinquency adjudication in juvenile court for kidnapping with a gang specification. He argues that his delinquency status is not supported by sufficient evidence and that it is against the manifest weight of the evidence. For the following reasons, we affirm.
 {¶ 2} On October 27, 2005, complaints were filed with the juvenile court alleging that G.R. was delinquent as it pertains to the following offenses, if otherwise committed by an adult: one count of kidnapping, two counts of felonious assault, one count of criminal gang activity, one count of intimidation of a criminal victim or witness, and one count of aggravated robbery. All six counts included a gang specification.
 {¶ 3} On March 27, 2006, the matter proceeded to a bench trial. The facts giving rise to the instant case occurred on September 9, 2005, at 7611 Worley Avenue, Cleveland, Ohio, beginning between 12:30 p.m. and 1:30 p.m.
 {¶ 4} At that time, the victim, Jonathan Swiger (Swiger), an admitted crack cocaine addict, left his friend's home after smoking crack cocaine, and proceeded down Worley Avenue. When Swiger neared 7611 Worley Avenue, Dale Scott (Scott) asked him to come inside to help him move out. *Page 4 
 {¶ 5} When Swiger entered, R.B. locked the front door and G.R. locked the back door, both with deadbolts. At this point, Swiger realized there was nothing to move as Scott had indicated.
 {¶ 6} Next, Scott, R.B., and G.R. surrounded Swiger and confronted him about damage sustained to the interior of the home, including ketchup, mustard, and other substances smeared on the walls. Swiger denied any involvement in the vandalism. Regardless, Scott slammed Swiger three times to the ground in a wrestling move, and the others punched Swiger in the face and chest.
 {¶ 7} Next, Scott retrieved a black and white bandana, a flag symbolic of the "Folks" gang to which Scott, R.B., and G.R. are members. Scott told Swiger that he was going to drop the flag and that if Swiger failed to keep it from falling to the ground, he would receive an additional beating. When Swiger failed to catch the flag, a second beating ensued.
 {¶ 8} Swiger was then ordered to clean the mess at 7611 Worley Avenue. Swiger cleaned for approximately thirty minutes. Other individuals, including a youth, C.C., came to the Worley Avenue residence. Swiger attempted to leave but was not allowed. He was not free to leave until the group finally left him alone in the house, almost four hours after arriving.
 {¶ 9} Swiger went to the hospital that evening, having sustained a cervical spine injury and multiple contusions. *Page 5 
 {¶ 10} On or about September 22, 2005, Swiger encountered R.B. and G.R. at a scrapyard. While there, R.B. and G.R. accused Swiger of going to the police regarding the September 9, 2005, incident. Based upon the conversation with R.B. and G.R., Swiger believed that they were going to beat him up again when he left the scrapyard. Also around that time, Swiger encountered R.B. outside of an automotive repair shop and was again accused of going to the police regarding September 9, 2005. R.B. told Swiger that if he was convicted Swiger was "dead." (Tr. 47.)
 {¶ 11} During the bench trial, counsel for G.R. motioned for acquittal as to all counts charged in the complaint pursuant to Juv. R. 29. The juvenile court granted G.R.'s motion as to all counts except kidnapping with the gang specification.
 {¶ 12} Following the bench trial, the juvenile court adjudicated G.R. delinquent on the count of kidnapping with a gang specification.
 {¶ 13} On July 30, 2007, the juvenile court committed G.R. to the Ohio Department of Youth Services as follows: one year for the gang specification and one year for kidnapping, to be served consecutively, not to exceed his twenty-first birthday.
 {¶ 14} G.R. appealed and set forth two assignments of error for our review.
 ASSIGNMENT OF ERROR ONE *Page 6 
 "The juvenile court erred as a matter of law by adjudicating appellant to be a delinquent child by virtue of having committed the offense of kidnapping, along with an accompanying gang specification, when there was insufficient evidence to support these convictions."
 {¶ 15} G.R. argues that there is insufficient evidence to support his delinquency adjudication for kidnapping with the attached gang specification.
 {¶ 16} It must first be noted that the same standard of review for sufficiency of evidence applies to juvenile and adult criminal matters.In re Washington, 81 Ohio St.3d 337, 1998-Ohio-627.
 {¶ 17} In reviewing a challenge to the sufficiency of the evidence, the Ohio Supreme Court set forth the following standard:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 18} R.C. 2905.01(A)(3) sets forth the elements of kidnapping and reads as follows:
 "No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes * * * (3) To terrorize, or to inflict serious physical harm on the victim or another * * *." *Page 7 
 {¶ 19} Additionally, R.C. 2923.03(A) sets forth the offense of complicity and reads:
 "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following * * * (2) Aid or abet another in committing the offense * * *."
 {¶ 20} Lastly, R.C. 2923.03(F) makes clear that an offender may be charged with complicity or with the principle offense:
 "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."
 {¶ 21} In the case sub judice, G.R. did not face a delinquency adjudication for complicity, but rather for kidnapping with a gang specification.
 {¶ 22} A review of the record reveals that Scott, by deception, removed Swiger from Worley Avenue and lured him under false pretense into his residence at 7611 Worley Avenue. Swiger testified that "Scott * * * asked me to come help him move some things out of his house, and I went over there to the house." (Tr. 15.) When asked if he helped Scott move anything, Swiger replied negatively and additionally stated "[b]ecause there was nothing in there to move." (Tr. 15.)
 {¶ 23} Thereafter, Scott, R.B., and G.R. restrained Swiger's liberty. As soon as Swiger entered Scott's residence, G.R. closed and locked the back door and *Page 8 
R.B. closed and locked the front door, thus restraining Swiger's liberty. (Tr. 16.) Thereafter, Scott, R.B. and G.R. further restrained Swiger's liberty by surrounding and confronting him regarding damage sustained to the home, including ketchup, mustard, and other substances smeared on the walls. (Tr. 17.)
 {¶ 24} Jessica Lindley (Lindley), Scott's girlfriend, lived at 7611 Worley Avenue with Scott and their two-year-old son. Lindley testified that Swiger asked to leave approximately six times. (Tr. 102.)
 {¶ 25} Swiger recalls asking to leave many times. (Tr. 27.) Swiger testified that he was never allowed to leave. (Tr. 39.) Swiger also testified that he did not feel that he was free to leave until the others left the house and he was left alone. (Tr. 40.) Swiger's inability to voluntarily leave is further evidence of restraint pursuant to R.C. 2905.01(A)(3).
 {¶ 26} Swiger sustained serious physical harm, pursuant to R.C. 2905.01(A)(3). G.R. participated in the beating when he hit Swiger. (Tr. 66.) Swiger went to MetroHealth Medical Center after he was able to leave the Worley residence and was diagnosed with a cervical spine injury and multiple contusions. (Tr. 41.) Swiger was also terrorized, pursuant to R.C. 2905.01(A)(3), when Scott threatened to beat him up if he failed to catch the black and white bandana. *Page 9 
 {¶ 27} Our analysis does not end here however, because G.R. was also adjudicated delinquent based upon a gang specification pursuant to R.C. 2941.142. A criminal gang is defined in R.C. 2923.41(A) as follows:
 {¶ 28} "`Criminal gang' means an ongoing formal or informalorganization, association, or group of three or more persons to whichall of the following apply:
 (1) It has as one of its primary activities the commission of one or more of the offenses listed in division (B) of this section.
 (2) It has a common name or one or more common, identifying signs, symbols, or colors.
 (3) The persons in the organization, association, or group individually or collectively engage in or have engaged in a pattern of criminal gang activity."
 {¶ 29} R.C. 2923.41(B)(1)(a) includes "[a] felony or an act committed by a juvenile that would be a felony if committed by an adult * * *."
 {¶ 30} In the case sub judice, the record makes it clear that G.R. participated in an ongoing association or group of three or more persons. Lindley testified that Scott, G.R., R.B. and C.C. were members of the "Folks" gang. (Tr. 99.) Scott was the acting leader of the gang and the individual responsible for admitting members into the gang. (Tr. 100, 112.) In order to become a member, you were required to fight someone. (Tr. 112.) The "Folks" gang had meetings in the backyard of 7611 Worley Avenue. (Tr. 113, 120.) G.R. attended those meetings. (Tr. 120.) *Page 10 
 {¶ 31} Additionally, G.R. and the other members of the gang present on September 9, 2005, committed kidnapping as one of its primary activities, an act that when committed by an adult would constitute a felony. See R.C. 2923.41(A)(1); R.C. 2905.01(A)(3).
 {¶ 32} Further, the black and white bandana used to terrorize Swiger is the flag or symbol for the "Folks" gang. (Tr. 98-99.) (See R.C. 2923.41(A)(2).) Cleveland Police Officer Mike Kitchen (Kitchen), with ten years of experience as a patrol officer and assigned to the vice unit when Swiger contacted police, testified as to the existence of "Folks" gang signs and graffiti in the neighborhood. (Tr. 143.) Kitchen also testified that the "Folks" gang colors are black and white and that the group uses a corresponding bandana as its symbol. (Tr. 143.) According to Kitchen, based upon his experience in the neighborhood, he knew Scott, R.B., C.C., and G.R. to be members of the "Folks" gang. (Tr. 144, 155.)
 {¶ 33} Swiger testified that on September 9, 2005, he wore the color red, typically worn by the gang known as the "Bloods." (Tr. 21.) Swiger further testified that the fact he wore red exacerbated the situation with members of the "Folks" gang present that day. (Tr. 22.)
 {¶ 34} In reviewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could find the essential elements of kidnapping with the gang specification beyond a reasonable doubt. *Page 11 
Thus, there exists sufficient evidence to sustain G.R.'s delinquency adjudication for kidnapping with a gang specification.
 {¶ 35} G.R.'s first assignment of error is overruled.
ASSIGNMENT OF ERROR TWO
 "The juvenile court's adjudication of appellant to be a delinquent child by virtue of having committed the offense of kidnapping, along with an accompanying gang specification, was against the manifest weight of the evidence."
 {¶ 36} G.R. argues that the verdict in the instant case is against the manifest weight of the evidence.
 {¶ 37} The same standard of review for the manifest weight of the evidence applies to juvenile criminal matters and adult criminal matters. In re J.A.S., 12th Dist. No. CA2007-04-046,2007-Ohio-6746.
 {¶ 38} Accordingly, the Ohio Supreme Court set forth the following standard for evaluating a claim that a verdict is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. *Page 12 
 {¶ 39} In applying the facts of this case as set forth in G.R.'s first assignment of error to the standard for evaluating a manifest weight of the evidence claim, in reviewing the entire record, in weighing the evidence and all reasonable inferences, in considering the credibility of the witnesses and in resolving conflicts in the evidence, we cannot find that the juvenile court clearly lost its way and created a manifest miscarriage of justice.
 {¶ 40} Scott removed Swiger from Worley Avenue by deception and lured him into his residence. R.B. and G.R. locked the front and back doors, respectively, thus restraining Swiger's liberty. In further evidence of restraint, despite multiple requests to leave, Swiger was not permitted to leave. Swiger sustained serious physical harm. G.R. participated by hitting Swiger.
 {¶ 41} Furthermore, G.R. participated in a gang known as the "Folks." G.R. attended meetings and was known by Kitchen as being a member of the gang. The "Folks" gang used a black and white bandana as its flag and used it to terrorize G.R. on September 9, 2005, by threatening to beat him again if he failed to catch it before it hit the floor. Scott, R.B., and G.R. participated in kidnapping on September 9, 2005, an act which if committed by an adult would constitute a felony. See R.C. 2923.41(A)(1); R.C. 2905.01(A)(3).
 {¶ 42} Thus, G.R.'s delinquency adjudication for kidnapping with a gang specification is not against the manifest weight of the evidence.
 {¶ 43} G.R.'s second assignment of error is overruled.
 Judgment affirmed. *Page 13 
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the juvenile division of common pleas court to carry this judgment into execution. The appellant's delinquency adjudication having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and MARY J. BOYLE, J., CONCUR
[1] The juveniles are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in all juvenile cases. *Page 1