[Cite as *State v. Collins*, 2012-Ohio-2450.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | Case No. 11CAA070064 |
| JONATHON W. COLLINS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Delaware County Court of
                                 Common Pleas, Case No. 10CRI020117B


JUDGMENT:                        AFFIRMED


DATE OF JUDGMENT ENTRY:          May 23, 2012


APPEARANCES:

For Joseph Collins:                      For Appellee:

WILLIAM T. CRAMER                        CAROL HAMILTON O'BRIEN
470 Olde Worthington Rd., Ste. 200       DELAWARE CO. PROSECUTOR
Westerville, OH 43082                    BRIAN J. WALTER
                                         140 North Sandusky St., 3rd Floor
                                         Delaware, OH 43015

*Delaney, J.*

{¶1}   Appellant Jonathon Collins appeals from the judgment entry of conviction and sentence entered in the Delaware County Court of Common Pleas on June 30, 2011.  Appellee is the State of Ohio.

*FACTS AND PROCEDURAL HISTORY*

{¶2}   This appeal is related to *State v. Joseph Collins,* Case Number 11CAA090082.  Joseph Collins and appellant are father and son, respectively, and co-defendants.

*The Van and its Contents*

{¶3}   This case arose on June 20, 2009, at 4:56 a.m.  Officer James Ailes of the Delaware Police Department was on routine patrol when he noticed a red minivan parked at the side of the road at the intersection of Hull Drive and Liberty Road, Delaware.   Four males were outside the van; one stood on the driver's side near the door, and three stood near the rear passenger door.  Ailes could not see what they were doing but found the activity to be unusual for the hour.

{¶4}   Ailes pulled up to the van and made contact with the driver, identified as Shane Copelan.  Copelan said he was tired and had wanted to pull over and stop. Ailes radioed his location to dispatch and started to get out of his cruiser.  As he got out, Copelan walked around to the rear of the van where the other three males stood. Ailes noticed a set of red bolt cutters on the roadway under the rear hatch of the van.

{¶5}   Ailes requested backup and asked the individuals to sit on the ground. The four were identified as Copelan, Joseph Collins, appellant, and his brother  Jason Collins.

{¶6}  Trooper Glasscox drove by as Ailes spoke with the individuals and stopped to offer assistance.

{¶7}  Ailes and Glasscox investigated the scene.  Dispatch advised Ailes appellant had an active arrest warrant and he was taken into custody.  Ailes noticed a piece of copper wire lying in the grassy area between the sidewalk and the roadway, next to the van.  Glasscox walked around the outside of the van and in plain view observed a large amount of cut copper in the back of the van.

{¶8}  The van was later inventoried and found to contain four sections of cut copper, a 25-foot piece of braided copper, and miscellaneous pieces of fencing, small copper pieces, clamps, and trash.  The four cut sections of copper were each approximately four feet long.  The 25-foot piece of braided copper was covered in dirt and debris as though it had been buried in the ground.   All of these items, and the red bolt cutters, were photographed.

{¶9}  Police learned Shane Copelan's girlfriend Jennifer Fleming owned the van.  Fleming came to the property storage lot and retrieved it.  Initially no charges were filed and the copper was tagged and placed into evidence.

{¶10} Joseph Collins was the only participant who offered any information about the source of the copper.  He claimed some of it came from a burnt-down grocery store in Columbus and some of it came from his aunt's barn in Lancaster. Joseph Collins further stated appellant and Jason Collins were with him when he obtained the copper, but Shane Copelan was not.

{¶11} Ailes contacted surrounding law enforcement agencies and railroads in an attempt to discover the source of the copper, with no results.

*The Fire at the AEP Substation*

{¶12} When Ailes came upon the Copelan/Collins stop, they were one-tenth of a mile from an American Electric Power (AEP) substation located at 1738 Liberty Road, Delaware.

{¶13} Less than a day later, at midnight on June 21, 2009, Ailes responded to a fire at the Liberty Road AEP substation. Ailes worked traffic at the fire because Liberty Road had to be closed.

{¶14} At 2:43 a.m., Ailes returned to the Liberty Road AEP substation for a report of breaking and entering. Technicians had investigated the fire and discovered evidence of a break-in, including a gate which had been cut and missing copper "grounds."

{¶15} Ailes responded and noticed the bolt on the gate appeared to have been cut with bolt cutters. He also observed an area of dirt where cable had been pulled out of the ground.

{¶16} Ailes immediately suspected the break-in and fire were related to the Copelan/Collins stop. He brought an AEP technician to the evidence room to view the copper recovered from the minivan. Ailes and the technician were able to line up the cut sections of copper recovered from the van with the missing portions stolen from the Liberty Road substation.

{¶17} Ailes met with Copelan and told him about the AEP substation break-in. Copelan now told him he had dropped off the Collinses around the intersection of Hull and Liberty. Soon after, they called him to come pick them up and now they had the copper with them.

{¶18} Jay Davis is a servicer of AEP substations and testified for the state at trial. Davis investigated the fire on June 21, 2009; when he arrived, he found one regulator was on fire. He de-energized the circuits and put the fire out.

{¶19} Davis looked for the cause of the fire and discovered several "grounds" had been cut and removed. "Grounds" are made of copper wire and function to return power. Removal of the ground wires may not immediately cause a fire, but eventually fire will result. Davis opined the fire was caused by the cutting and removal of the ground wires.

{¶20} At the time of these events, there had been many similar copper thefts from AEP substations. Two AEP witnesses noted the thefts commonly involved the same wires: those in locations thieves could easily access.

{¶21} AEP substation supervisor Michael Coffey also testified at trial. Coffey was responsible for investigating the damage at the Liberty Road substation and for setting up a work order to track the necessary repairs. Coffey noted because of the theft, a power outage lasting approximately 23 minutes occurred and a circuit had to be removed from service. The fire and resulting repair operations created at least one outage for AEP customers in 270 households.

{¶22} Coffey agreed the fire started because it "lost its grounds;" removing the copper grounds created a heating effect which began to smolder and eventually resulted in a fire.

{¶23} Although Coffey did not factor the AEP customers' power outage into the cost of the theft, he was able to calculate the amount of the loss to AEP based upon replacement materials and labor. The total cost was $8,010.32.

*Criminal Charges and Two Bench Trials*

{¶24} Copelan, Joseph Collins, Jason Collins and appellant were each charged by indictment with one count of vandalism in an amount greater than $5000 but less than $100,000, a felony of the fourth degree [R.C. 2909.05(B)(1)(b)], one count of possession of criminal tools [R.C. 2923.24(A)], one count of theft in an amount greater than $500 but less than $5000, a felony of the fifth degree [R.C. 2923.24(A)], one count of breaking and entering, a felony of the fifth degree [R.C. 2911.13(B)], one count of disrupting public service, and one count of receiving stolen property in an amount greater than $500 but less than $5000, a felony of the fifth degree [R.C. 2913.51(A)].

{¶25} Copelan ultimately entered pleas of guilty on October 8, 2010, and was sentenced on January 24, 2011.

{¶26} Jason Collins' case was transferred to a visiting judge, who presided over a bench trial and acquitted Jason Collins of all charges on January 6, 2011.

{¶27} On January 18, 2011, Joseph Collins and appellant moved to dismiss their indictments, arguing the state had fully litigated the case in Jason Collins' trial and was therefore precluded from trying the remaining co-defendants in a separate trial. They argued further prosecution was barred by collateral estoppel and double jeopardy.

{¶28} The trial court overruled the motion to dismiss, noting neither appellant, nor Joseph Collins, nor the state had moved to sever the trials; appellant never asserted that he should have been tried with Jason Collins; and the co-defendants never objected to the "*de facto* severance" of the trials. The trial court ruled the

findings in Jason Collins' trial were specific to Jason Collins, and subsequent trial of appellant and Joseph Collins was not barred by collateral estoppel, res judicata, or double jeopardy.

{¶29} Appellant and Joseph Collins each waived his right to trial by jury, and the matters proceeded to a joint bench trial on April 27, 2011. Both were found guilty as charged on each count of the indictment, with the exception of Count Five, disrupting public services, for which each was found not guilty.

{¶30} The trial court found that Counts One, Three, and Six (vandalism, theft, and receiving stolen property) merged for purposes of sentencing, and appellee elected to sentence on Count One, vandalism. Appellant received an aggregate sentence of three years on community control. He was also ordered to pay restitution.

{¶31} Appellant appeals from the judgment entries of conviction and sentence.

{¶32} Appellant raises one Assignment of Error:

{¶33} "I. THE TRIAL COURT VIOLATED APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS, AND APPELLANT'S RIGHT TO BE TRIED TOGETHER WITH HIS JOINTLY INDICTED CODEFENDANTS UNDER R.C. 2945.13 AND CRIM. R. 14, BY ALLOWING APPELLANT'S CASE TO GO TO TRIAL AFTER A CODEFENDANT HAD ALREADY BEEN SEPARATELY TRIED AND ACQUITTED OF ALL CHARGES."

I.

{¶34} Appellant argues in his sole assignment of error his trial was barred by the fact that codefendant Jason Collins was tried separately and acquitted.[1]  We disagree.

{¶35} First, we note neither appellant nor counsel objected to the separate trial of co-defendant Jason Collins until after Jason Collins was tried and acquitted.  We therefore review this claim under a plain error standard of review.  *See, State v. Dunn,* 5th Dist. No. 2008-CA-00137, 2009-Ohio-1688, ¶ 89.  Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  The rule places several limitations on a reviewing court's determination to correct an error despite the absence of a timely objection at trial: (1) "there must be an error, i.e. a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes an "obvious defect in the trial proceeding," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial."  *State v. Morales,* 10 Dist. Nos. 03—AP-318, 03-AP-319, 2004-Ohio-3391, at ¶ 19, quoting *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *State v. Gross,* 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 45.  The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *Barnes,* supra,

---

[1] This is the same argument raised in his father's first assignment of error in case number 11CAA090082.

quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶36} R.C. 2945.13 states, "When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately."

{¶37} Crim.R. 8(B) provides that two or more defendants may be charged in the same indictment if they are alleged to have participated in the same series of acts constituting an offense, or in the same course of criminal conduct. The joinder of defendants and the avoidance of multiple trials are favored in the law because joinder "conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980).

{¶38} We note there was no application by a party to try the cases separately. The Supreme Court of Ohio assigned a visiting judge to hear 10CR-I-02-0117(C), *State of Ohio v. Jason A. Collins*. While the record leading to this assignment is not before us, in its entry overruling appellant's motion to dismiss, the trial court referenced "a standing objection the State of Ohio has raised regarding this court hearing cases in which [trial counsel of Jason Collins] is representing a defendant." Due to a conflict of interest alleged by appellee, therefore, the trial court recused itself from the Jason Collins case.

{¶39} Whether an accused shall be tried separately from a co-defendant is a matter within the sound discretion of the trial court. *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). Generally, the burden is upon the defendant to show good cause why a separate trial should be granted and that the trial court abused its discretion in refusing to do so. *State v. Jacocks*, 5th Dist. No. 2002CA00359, 2003-Ohio-6839, ¶ 92, appeal not allowed, 102 Ohio St.3d 1445, 2004-Ohio-2263, 808 N.E.2d 397. A defendant claiming error in the trial court's refusal to sever offenses or defendants has the burden of affirmatively showing that his rights were prejudiced by the joinder. *State v. Vargas*, 5th Dist. No. 2001CA00044, 2002-Ohio-2478, citing *Torres*, supra.

{¶40} Appellant essentially argues for an extension of R.C. 2945.13 and Crim.R. 8: all three codefendants should have been tried together, and because one co-defendant was tried separately, first, trial of the remaining co-defendants is barred altogether. Appellant presents no case authority supporting such an extension, and more significantly, failed to raise this argument until *after* the first co-defendant had already been tried and acquitted.

{¶41} The record fails to disclose error, plain or otherwise. The trial court did not deviate from a legal rule in recusing itself from one co-defendant's case and trying the remaining two in a joint trial.

{¶42} Appellant's sole assignment of error is overruled. The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Hoffman, J. and

Farmer, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER

PAD:kgb

[Cite as *State v. Collins*, 2012-Ohio-2450.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JONATHON W. COLLINS | : | |
| | : | |
| | : | Case No. 11CAA070064 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed.  Costs assessed to appellant.


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER