[Cite as *In re L.W.*, 2013-Ohio-5735.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99527**

# IN RE:   L.W., JR.
# A Minor Child

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 12112291

**BEFORE:**   Blackmon, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:**   December 26, 2013

**ATTORNEYS FOR APPELLANT**

Timothy Young
State Public Defender

By:   Brooke M. Burns
Assistant State Public Defender
250 E. Broad Street, Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Amey L. Tucker
Assistant County Prosecutor
9300 Quincy Avenue, 4th Floor
Cleveland, Ohio 44106

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant L.W. appeals the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, that found him delinquent by reason of committing felonious assault, and placed him in the custody of the Ohio Department of Youth Services ("ODYS").[1]  L.W. assigns the following errors for our review:

> I. The juvenile court committed plain error when it permitted the playing of [L.] W.'s tape-recorded statement to law enforcement at trial, as [L.] did not knowingly, intelligently, or voluntarily, waive his right under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Fifth and Fourteenth Amendments to the United States Constitution; Section 10, Article I of the Ohio Constitution.

> II. [L.] W. was denied the effective assistance of counsel because counsel failed to file a motion to suppress [L.'s] uncounseled statement to law enforcement, and because counsel failed to request that [L.] and his co-defendant be tried separately.  (Vol II T.pp. 3-186).  Fifth, Sixth and Fourteenth Amendments to the United States Constitution; Section 10, Article I of the Ohio Constitution.

> III. The juvenile court erred when it adjudicated [L.] W. delinquent of felonious assault, when no evidence was presented that he or his co-defendant knowingly caused or attempted to cause physical harm to another.  (Vol II, T.pp. 15-186; A-1).  Fifth and Fourteenth Amendments to the United States Constitution; Article I, Section 16 of the Ohio Constitution, and Juvenile Rule 29(e)(4).

> IV. The juvenile court violated [L.] W.'s right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 16 of the Ohio Constitution when it adjudicated him delinquent of felonious assault, and the accompanying specifications when the manifest weight of the evidence presented at trial did not demonstrate that [L.] or his co-defendant committed a felonious assault.

---

[1]This appeal is a companion case arising out of the same events as contained in *In Re C.M.*, 8th Dist. Cuyahoga No. 99599, 2013-Ohio-5426.

V. The juvenile court committed plain error by finding [L.] W. delinquent of and committing him to DYS on the specifications outlined in R.C. 2941.145 and 2941.146, for the same conduct. R.C. 2941.25(A). (A-1). Fifth and Fourteenth Amendments to the United States Constitution. Article I, Section 10 of the Ohio Constitution.

{¶2} Having reviewed the record and pertinent law, we affirm the trial court's adjudication. The apposite facts follow.

{¶3} On July 26, 2012, a three-count complaint, naming three separate victims, was filed against L.W. and his co-delinquent C.M., alleging that they were delinquent for felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree if committed by an adult. Each count included one-and three-year firearm specifications, as well as a five-year drive-by-shooting specification. The matter proceeded to an adjudicatory hearing before a trial judge.

{¶4} The allegations giving rise to the complaint were that in the early morning hours of July 23, 2012, three friends, E.B., E.M., and I.G., were walking along East 79th Street and St. Clair Avenue, when a car driven by L.W., and occupied by C.M., and T.F., pulled alongside them and stopped. By all accounts, L.W. asked the three friends where they were from, gang language used to ascertain an individual's neighborhood.

{¶5} E.B. and E.M. responded "nowhere," indicating a lack of gang affiliation, but I.G. indicated that he was from the "Cut Throat" gang. L.W. responded by stating that he was "L.J. from Hough Harlem" and indicated that if the three friends were members of the "76" gang, he would have to "get busting at y'all," gang language for "start shooting." L.W. told the three friends that everything was okay and then drove off. The three

friends proceeded to walk to E.B.'s girlfriend's house where they visited for about an hour.

{¶6} At approximately 2:30 a.m., the three friends were walking from E.B.'s girlfriend's house when they encountered L.W. driving in the opposite direction. L.W. honked the car's horn twice and E.B. put two fingers in the air to acknowledge the greeting. Moments later, gunshots rang out. The three friends began to run, but E.B. was hit in the head, fell to the ground, and sustained severe brain injury.

{¶7} A day and a half after the shooting, L.W., accompanied by his mother, voluntarily appeared at the police station and requested an audience with Detective Michael Legg. After being advised of his *Miranda* rights, L.W. proceeded to participate in a tape-recorded interview. In the interview, L.W. admitted that he was a member of the "Hough Harlem" gang and that he had twice encountered E.B. and his two friends in the early morning hours of July 23, 2012, in a rival gang's area.

{¶8} L.W. indicated that shortly after the second encounter, he heard shots ring out. L.W. denied that any shots were fired from his car; instead he indicated that he and the other occupants thought members of the "76" gang were shooting at the car. L.W. came to the police station because he heard rumors that he was involved in a shooting.

{¶9} C.M., accompanied by his mother, also appeared at the police station and requested an audience with Detective Legg. C.M., like L.W., also participated in a tape-recorded interview after being read his *Miranda* rights. C.M. recounted

substantially the same version of the events as L.W., and also denied that any shots were fired from the car.

{¶10} The co-delinquents were tried jointly at the adjudication hearing. The state offered the testimony of all three victims and that of Detective Legg, as well as the tape-recorded interviews of the co-delinquents.

{¶11} E.B. testified that a part of his skull had to be removed temporarily because of the gunshot to the head. E.B. stated that he was in a coma until September 2012, that he has had to relearn basic functions, and has been grappling with memory loss. E.B.'s recollection of the events paralleled that of the two co-delinquents, except that he testified that the shots rang out within five seconds after L.W. honked the car's horn at the time of the second encounter. E.B. said that although he did not see who fired the shots, he concluded it came from the car driven by L.W., because there was no one else around at that time of the morning.

{¶12} The second victim, E.M., likewise testified that he did not see where the gunshots came from, but also concluded that it must have come from the car, because there was no one else around. E.M. also concluded, based on where he and the other victims were located, that the gunshots had to have come from the passenger's side of the vehicle.

{¶13} The third victim, I.G., testified that when he heard the gunshots, he saw "sparkles" or flashes of light coming diagonally across the street behind some bushes. I.G. stated he smoked marijuana daily and on that particular night, he had smoked what is

referred to as "loud."  I.G. testified that "loud" is much more potent than regular marijuana, thus giving the smoker a greater "high."

{¶14} Detective Legg, a 17-year veteran with the Cleveland Police Department testified that he was the investigating officer on the case.  Detective Legg stated that both co-delinquents voluntarily made statements after being advised of their *Miranda* rights and both denied that shots were fired from the car.  During Detective Legg's testimony, the tape-recorded statements of the co-delinquents were played in open court.

{¶15} Detective Legg testified that L.W. admitted that he had spoken to I.G. before coming to the police station.  Detective Legg stated that after they finally located I.G., he refused to identify anyone and refused to give a statement.  Detective Legg subsequently learned that both E.M.'s and I.G.'s families relocated them from the Cleveland area because of threats.

{¶16} The trial judge ultimately found that the state proved the allegations of the complaint beyond a reasonable doubt, thereby finding L.W. delinquent of the charge of felonious assault along with the aforementioned one-and three-year firearm specification, as well as the drive-by shooting firearm specification.   The  trial judge subsequently committed L.W. to the custody of the ODYS for an aggregate term consisting of a minimum period of three years and a maximum period not to exceed his attainment of 21 years of age.

## Waiver of *Miranda* Rights

{¶17} In the first assigned error, L.W. argues the juvenile court erred when it admitted his tape-recorded statement to Detective Legg, because he did not knowingly waive his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶18} Juveniles are entitled both to protection against compulsory self-incrimination under the Fifth Amendment and to *Miranda* warnings where applicable. *In Re M.W.*, 8th Dist. Cuyahoga No. 94737, 2010-Ohio-6362. Any statements made by a suspect may not be used in evidence where those statements were made during a custodial interrogation unless *Miranda* warnings were properly given to the suspect. *State v. Andrews*, 3d Dist. Allen No. 1-05-70, 2006-Ohio-3764, citing *Miranda* at 444.

{¶19} Interrogation is defined as any "statement, question or remark by a police officer * * * reasonably likely to elicit an incriminating response * * *." *In re Forbess*, 3d Dist. Auglaize No. 2-09-20, 2010-Ohio-2826, citing *State v. Knuckles*, 65 Ohio St.3d 494, 605 N.E.2d 54, paragraph two of the syllabus. Furthermore, "[a] person is considered in custody for purposes of *Miranda* when he is placed under formal arrest or his freedom of action is restrained to a degree associated with a formal arrest." *Id.*, citing *State v. Simpson*, 10th Dist. Franklin No. 01AP-757, 2002-Ohio-3717.

{¶20} The proper inquiry for determining if an individual has been placed in custody is whether, under the totality of the circumstances, a reasonable person would believe he is not free to leave. *State v. Gumm*, 73 Ohio St.3d 413, 429, 653 N.E.2d 253

(1995), citing *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶21} A suspect may either waive or invoke his *Miranda* rights, including his Fifth Amendment right to counsel, and, if a request for counsel is made, the interrogation must not recommence until counsel is present. *State v. Kleingers*, 1st Dist. Hamilton Nos. C-980764 and 98TRC-17902A, 1999 Ohio App. LEXIS 2889 (June 25, 1999), citing *Miranda* at 474. In order for a defendant's waiver of *Miranda* rights to be valid, the waiver must be knowingly, intelligently, and voluntarily made. *Id.* at 444.

{¶22} The state bears the burden of demonstrating, by a preponderance of the evidence, that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights based on the totality of the circumstances. *State v. Moore*, 8th Dist. Cuyahoga No. 95106, 2012-Ohio-1958, 970 N.E.2d 1098, citing *State v. Gumm*, 73 Ohio St.3d 413, 429, 653 N.E.2d 253 (1995). "The totality of the circumstances includes 'the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of threat or inducement.'"*State v. Campbell*, 90 Ohio St.3d 320, 332, 738 N.E.2d 1178 (2000), quoting *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus. Absent a showing that the waiver was voluntary, the waiver is invalid and the defendant's statements should be suppressed. *Id.*

{¶23} Based on our review of the record, we find that L.W.'s waiver of his right to counsel was voluntarily given. Initially, we note, L.W., accompanied by his mother,

voluntarily appeared at the 5th District police station and requested an audience with Detective Legg. L.W. was not arrested until after he had made incriminating statements during the interview. As such, L.W. was not in custody for purposes of *Miranda* at the time of the interview.

{¶24} As previously noted, subsequent to their arrival, a tape-recorded interview took place. At the beginning of the interview, Detective Legg asked both L.W. and his mother some introductory questions, such as their names and dates of birth, before reading L.W. his *Miranda* rights. After reading L.W. his *Miranda* rights, Detective Legg asked if they understood, and both L.W. and his mother indicated they understood the rights. Detective Legg then proceeded to ask L.W. specific questions regarding the shooting.

{¶25} Aside from L.W.'s own admissions, the factors we must consider support our conclusion that the waiver was voluntarily made. Here, the record reveals that L.W. has had prior experiences with the police, that he was placed on probation in 2011 for carrying a concealed weapon. L.W., who was 16 at the time of the interrogation, exhibited the mental, as well as the emotional capacity to voluntarily waive his rights, and there was no evidence that L.W. had a diminished understanding.

{¶26} Nonetheless, within this assigned error, L.W. also argues he did not knowingly and intelligently waive his *Miranda* rights. In support of this argument, L.W. claims Detective Legg never inquired into his educational level or ascertained whether he had difficulty understanding written or verbal communication.

**{¶27}** However, an individual's low intellect does not necessarily render him or her incapable of waiving *Miranda* rights. *State v. Goodwin*, 8th Dist. Cuyahoga No. 99254, 2013-Ohio-4591. *See also State v. Jenkins*, 15 Ohio St.3d 164, 233, 473 N.E.2d 264 (1984); *State v. Hall*, 48 Ohio St.2d 325, 333, 358 N.E.2d 590 (1976). Rather, a person's low intellect is but one of many factors under the totality of circumstances that a court must consider in assessing the voluntariness of a *Miranda* waiver or confession. *State v. Frazier*, 115 Ohio St.3d 139, 154, 2007-Ohio-5048, 873 N.E.2d 1263.

**{¶28}** Here, the record reveals that prior to the shooting that led to the instant charges, L.W. had been suspended from school and had eventually stopped going. Pertinently, the record indicates that while L.W. was in school, he was not in any special education classes. Therefore, in our view, L.W. has failed to demonstrate that he lacked the capacity to understand and appreciate the consequences of speaking to the police about his encounter with the three victims.

**{¶29}** As such, we conclude that L.W. voluntarily, knowingly, and intelligently waived his *Miranda* rights. Consequently, the juvenile court properly admitted L.W.'s tape-recorded statement. Accordingly, we overrule the first assigned error.

### Ineffective Assistance of Counsel

**{¶30}** In the second assigned error, L.W. argues he was denied the effective assistance of counsel.

**{¶31}** To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the

deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Strickland* at 688.

{¶32} When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id*. at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id*. at 694.

{¶33} Within this assigned error, L.W. argues trial counsel was ineffective for failing to file a motion to suppress the tape-recorded statement he gave to Detective Legg.

{¶34} "Failure to file a motion to suppress is not per se ineffective assistance of counsel." *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based upon the record, the motion would have been granted. *State v. Robinson*, 108 Ohio App.3d 428, 433, 670 N.E.2d 1077 (3d Dist.1996).

{¶35} Thus, we must determine from the record whether a motion to suppress would have been granted if L.W.'s trial counsel had filed one. If so, L.W.'s counsel was ineffective for failing to file it. In the first assigned error, we found that L.W.

knowingly, voluntarily, and intelligently waived his *Miranda* rights and that the juvenile court properly admitted the tape recorded statement. As such, in all likelihood, had L.W.'s trial counsel filed a motion to suppress the tape-recorded statement to Detective Legg, it would not have been granted. Consequently, L.W. has not demonstrated that he was denied the effective assistance of counsel on this ground.

{¶36} Within this assigned error, L.W. also argues that trial counsel was ineffective for failing to request separate trial from, C.M., his co-delinquent.

{¶37} R.C. 2945.13 states,

> When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately.

{¶38} Crim.R. 8(B) provides that two or more defendants may be charged in the same indictment if they are alleged to have participated in the same series of acts constituting an offense, or in the same course of criminal conduct. The joinder of defendants and the avoidance of multiple trials are favored in the law because joinder "conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Collins*, 5th Dist. Delaware No. 11CAA070064, 2012-Ohio-2450, quoting *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980).

**{¶39}** "The test is whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever. * * *'" *State v. Deltoro*, 7th Dist. Mahoning No. 07-MA-90, 2008-Ohio-4815, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 89, 564 N.E.2d 54 (1990).

**{¶40}** In this case, L.W. can point to no prejudice he suffered as a result of his joint trial with C.M., his co-delinquent. If L.W. had a separate trial, the evidence offered against him would have been exactly the same as in his joint trial. There was no evidence that was offered only against C.M. As such, in all likelihood, had trial counsel requested a separate trial, the juvenile court would have denied the request.

**{¶41}** Finally, we note that the failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial. *State v. Witherspoon*, 8th Dist. Cuyahoga No. 94475, 2011-Ohio-704. Consequently, because we find that a motion to suppress on either ground would have been futile, we decline to conclude L.W.'s trial counsel was ineffective. Accordingly, we overrule the second assigned error.

## Sufficiency of the Evidence

**{¶42}** In the third assigned evidence, L.W. argues the evidence was insufficient to sustain the adjudications.

**{¶43}** It must first be noted that the same standard of review for sufficiency of evidence applies to juvenile and adult criminal matters. *In re G.R.*, 8th Dist. Cuyahoga No. 90391, 2008-Ohio-3982, citing *In re Washington*, 81 Ohio St.3d 337, 691 N.E.2d 285 (1998). The sufficiency of the evidence standard of review is set forth in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus:

> Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.

*See also State v. Apanovitch*, 33 Ohio St.3d 19, 23, 514 N.E.2d 394 (1987); *State v. Davis*, 49 Ohio App.3d 109, 113, 550 N.E.2d 966 (8th Dist.1988).

**{¶44}** *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)

**{¶45}** Felonious assault is defined by R.C. 2903.11(A), which states that "[n]o person shall knowingly: (1) Cause serious physical harm to another * * *; [or] (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." *In re R.G.*, 8th Dist. Cuyahoga No. 90389, 2008-Ohio-6469.

**{¶46}** In the instant case, it is undisputed that E.B. sustained serious physical harm as a result of the gunshot wound. E.B. remained in a coma for almost two months, had to have a part of his skull removed, and had to relearn basic functions. All three victims' version of the two encounters parallels the version of the co-delinquents. Two of the three victims testified that they concluded that the shots had to have come from the car L.W. was driving because the shots rang out within seconds after L.W. honked the horn.

**{¶47}** Although, L.W. and his co-delinquent denied that shots were fired from the car, both E.B. and E.M testified that there were no other people on the street and there were no other cars around. Further, although I.G. testified that the shots came from behind bushes across the street, Detective Legg testified that L.W. admitted that he had contact with I.G. before coming to the police station. In this regard, the following exchange took place in the tape-recorded interview played in open court:

| The Detective: | So how did we get past the point of you being picked out of the photo arrays and them saying the shooter was in your car? |
| --- | --- |
| Mr. [L.W.] | I talked to [I.G.] and he said that we are the only we say. They are saying that other people, somebody jumping out the bushes, came out the bushes, shooting out the bushes. |
| The Detective: | So some random phantom guy just jumps out the bushes and starts shooting? |
| Mr. [L.W.] | I don't know. There are people at Wade Park. I talked to half of them, all his friends, all of them, his sister. How many witnesses was there? There was only three of them, I think. (Tr. 153.) |

**{¶48}** Interestingly, I.G.'s testimony, the only victim that did not conclude that the gunshots came from the car, mirrors the above excerpt of L.W.'s tape-recorded statement to Detective Legg.

**{¶49}** Although the evidence is largely circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *In re N.S.*, 8th Dist. Cuyahoga No. 93153, 2010-Ohio-1057, citing *State v. Basham*, 5th Dist. Muskingum No. CT2007-0010, 2007-Ohio-6995. As such, in reviewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact would conclude, given that there were no other cars or people around, and given that gunshots rang out within seconds after L.W. honked the car's horn, that the gunshots were fired from the car.

**{¶50}** Further, because E.B. sustained serious physical injuries that could have been fatal, any rational trier of fact would conclude that the essential elements of felonious assault, along with the attached specifications, proven beyond a reasonable doubt. Thus, there exists sufficient evidence to sustain L.W.'s delinquency adjudication for felonious assault and the accompanying specifications. Accordingly, we overrule the third assigned error.

## Manifest Weight of the Evidence

**{¶51}** In the fourth assigned error, L.W. argues his adjudications were against the manifest weight of the evidence.

**{¶52}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:

> "The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

**{¶53}** As discussed in the third assigned error, the state presented sufficient evidence to establish that L.W. caused serious physical harm to E.B. Nonetheless, L.W. argues that the state's witnesses gave conflicting testimony; that no one saw co-delinquent C.M. fire a gun; that there was a lack of physical or forensic evidence; and that E.B.'s injury was inconsistent with the state's theory of the case.

**{¶54}** However, this court is mindful that weight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v.*

*Chavez*, 8th Dist. Cuyahoga No. 99436, 2013-Ohio-4700, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraphs one and two of the syllabus.

**{¶55}** Further, because the factfinder has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. *State v. Robinson*, 8th Dist. Cuyahoga No. 99290, 2013-Ohio-4375, citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709 (Aug. 22, 1997). Thus, the decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

**{¶56}** Here, while acknowledging the presence of conflicting testimony, as discussed in the third assigned error, the logical conclusion, from the evidence presented, is that the gunshots were fired from the car L.W. was driving. Despite I.G.'s claim that he saw sparkles coming diagonally across the street behind bushes, L.W. admitted in the tape-recorded interview with Detective Legg, that he contacted I.G. before coming to the police station. As previously noted, when the police finally contacted I.G., he refused to cooperate, and subsequently relocated from the Cleveland area presumably because of threats.

**{¶57}** Thus, it was in the province of the juvenile court to conclude that I.G.'s version of the events was procured through threats. The juvenile court could also have concluded that I.G.'s version of the events was blurred by having smoked an admittedly

highly potent dose of marijuana.    The juvenile court, who had the opportunity to see and

hear the witnesses, had the peculiar advantage to competently credit or discount the

testimony of a particular witness.

{¶58} Thus, based on the foregoing, we cannot say that the juvenile court clearly

lost its way and created such a manifest miscarriage of justice that the adjudications are

against the manifest weight of the evidence.    Accordingly, we overrule the fourth

assigned error.

### Firearm Specification

{¶59} In the fifth assigned error, L.W. argues the juvenile court erred when it

adjudicated him delinquent of firearm specifications under both R.C. 2941.145 and

2941.146 for the same conduct, in violation of R.C. 2941.25(A).

{¶60} R.C. 2152.17 governs commitments for specifications in juvenile cases, and

provides in part as follows:

> (A) Subject to division (D) of this section, if a child is adjudicated a
> delinquent child for committing an act, other than a violation of section
> 2923.12 of the Revised Code, that would be a felony if committed by an
> adult and if the court determines that, if the child was an adult, the child
> would be guilty of a specification of the type set forth in section 2941.141,
> 2941.144, 2941.145, 2941.146, 2941.1412, 2941.1414, or 2941.1415 of the
> Revised Code, in addition to any commitment or other disposition the court
> imposes for the underlying delinquent act, all of the following apply:
>
> * * *
>
> (2) If the court determines that the child would be guilty of a specification
> of the type set forth in section 2941.145 of the Revised Code * * * and the
> court determines that the child would be guilty of a specification of the type
> set forth in section 2941.1415 of the Revised Code, the court *shall* commit
> the child to the department of youth services for the specification for a

definite period of not less than one and not more than three years, and the court also shall commit the child to the department for the underlying delinquent act under sections 2152.11 to 2152.16 of the Revised Code.

(3) If the court determines that the child would be guilty of a specification of the type set forth in section 2941.144, 2941.146, or 2941.1412 of the Revised Code * * * and the court determines that the child would be guilty of a specification of the type set forth in section 2941.1414 of the Revised Code, the court *shall* commit the child to the department of youth services for the specification for a definite period of not less than one and not more than five years, and the court *also shall* commit the child to the department for the underlying delinquent act under sections 2152.11 to 2152.16 of the Revised Code.

* * *

(E) The court shall not commit a child to the legal custody of the department of youth services for a specification pursuant to this section for a period that exceeds five years for any one delinquent act. Any commitment imposed pursuant to division (A), (B), (C), or (D)(1) of this section shall be in addition to, and shall be served consecutively with and prior to, a period of commitment ordered under this chapter for the underlying delinquent act, and each commitment imposed pursuant to division (A), (B), (C), or (D)(1) of this section *shall be in addition to, and shall be served consecutively with*, any other period of commitment imposed under those divisions. If a commitment is imposed under division (A) or (B) of this section and a commitment also is imposed under division (C) of this section, the period imposed under division (A) or (B) of this section shall be served prior to the period imposed under division (C) of this section.

* * *

The total of all the periods of commitment imposed for any specification under this section and for the underlying offense shall not exceed the child's attainment of twenty-one years of age.

(Emphasis added.)

{¶61} At the outset we note, a firearm specification and its predicate offense are not allied offenses of similar import "because a firearm specification is a penalty

enhancement, not a criminal offense." *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, citing *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, ¶ 19. Under the above governing statutory mandate, the juvenile court is without discretion when sentencing juveniles on delinquencies for firearm specifications under R.C. 2941.145 and 2941.146.

**{¶62}** When firearm specifications under both R.C. 2941.145 and 2941.146 accompany the same offense and are both found true, a court must impose a three-year term under R.C. 2929.14(D)(1)(a)(ii) and a five-year term under R.C. 2929.14(D)(1)(c). *State v. Hudson*, 2d Dist. Montgomery No. 23328, 2010-Ohio-1622. *See also State v. Gresham*, 8th Dist. Cuyahoga No. 81250, 2003-Ohio-744. Further, the above-mentioned statutory provisions apply regardless of whether the juvenile was adjudicated delinquent as the principal offender or an accomplice. *See* R.C. 2152.17(B)(2).

**{¶63}** Based on the foregoing, the juvenile court did not err when it imposed separate and consecutive commitments. Accordingly, we overrule the fifth assigned error.

**{¶64}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The trial court's adjudication of delinquency having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of commitment.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, SR., J., CONCUR